AARON SNELL, Respondent, v. GEORGE LEVITT, Appellant.

While an easement acquired by grant cannot be lost by mere non-user for any length of time, it may be extinguished by abandonment; and non-user for a period of twenty years, under circumstances showing an intention to surrender the easement, is sufficient to extinguish it.

*It seems* a non-user, under such circumstances, for a less period than twenty years, where the abandonment has been acted upon by the owner of the servient tenement, so that it would work harm to him if the easement were thereafter asserted, will operate to extinguish it.

In 1862, S. being the owner of land, upon which was a spring, conveyed by warranty deed a portion thereof to H., with a right to the grantee to lay pump logs to conduct water from the spring to the land conveyed. In 1863, H., who had not used the easement, entered into an agreement with S., by which, for the consideration of $75, she agreed to relinquish all her right, title and interest in the spring, S agreeing to allow her to draw water from pump logs running to his house from another spring. Soon after the execution of this instrument S. tapped said pump logs and conducted the water therefrom to her premises. This use was continued for many years, and after that the occupants of the H. premises obtained water from still another spring. In October, 1883, plaintiff, who had succeeded to the title of —, attempted to use the easement; prior to that time no person holding under the grant to H had ever made any such attempt, and in December, 1883, plaintiff commenced this action against defendant who occupied the premises upon which was the spring, to recover damages for an alleged wrongful interference with the easement. It appeared that H. conveyed her premises by deed, containing the same description and purporting to grant the same easement as that in the deed from S. and the several mesne conveyances, including that under which plaintiff claims contained the same description of land and easement. The premises, upon which was the spring, were conveyed by S. without any reservation of the easement granted to H. and through various mesne conveyances, none of which contained any such reservation, defendant acquired title, the various grantees purchasing without notice of any claim of an existing easement under the deed to H. *Held*, that the facts showed, as matter of law, an abandonment and extinguishment of the easement.

It was claimed by plaintiff that, as the instrument releasing the easement was not recorded, it had no operation as against subsequent grantees of the premises of H. without notice. *Held*, that while this contention might be well founded if the extinguishment of the easement depended solely upon the instrument, it was only important here, as showing, with the other facts, an intention to abandon the easement; and this having

been shown and the easement having thus been extinguished, there was nothing for the deeds under which plaintiff holds or for the recording act to operate on.

*Snell* v. *Levitt* (39 Hun, 227) reversed.

(Argued June 6, 1888; decided October 26, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the third judical department, entered upon an order made January 26, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict. (Reported below, 39 Hun, 227.)

The nature of the action and the material facts are stated in the opinion.

*E. Countryman* for appellant. There was an actual abandonment by Mrs. Higgins. of the easement, accompanied by an intention on her part that it should be permanent, and a substitution of another easement in its place ; which was followed by acts involving expenditure on the part of Snell on the faith thereof, such as laying pipe and diverting the water from the spring to other houses. (Washb. Easements [4th ed.] 707 ; *Corning* v. *Gould*, 16 Wend. 531 ; *Crain* v. *Fox*, 16 Barb. 184 ; *Lattimer* v. *Livermore*, 72 N. Y. 174 ; *Cartwright* v. *Maplesden*, 53 id. 622 ; *Taylor* v. *Hampton*, 4 McCord [S. C.] 96 ; *Cowry* v. *Andrews*, 123 Mass. 155 ; *King* v. *Murphy*, 140 id. 254 ; *Jamaica, etc., Co.* v. *Chandler*, 121 id. 3 ; *Pope* v. *Devereux*, 5 Gray, 409 ; *Morse* v. *Copeland*, 2 id. 302 ; *Dyer* v. *Sanford*, 9 Metc. 395 ; *Curtis* v. *Noonan*, 10 Allen, 406 ; *Volger* v. *Geiss*, 51 Md. 407 ; *Glenn* v. *Dous*, 35 id. 208, 217 ; *Ballard* v. *Butler*, 30 Me. 94, 98, 99 ; *Steere* v. *Tiffany*, 13 R. I. 568 ; *Queen* v. *Chorley*, 12 A. & E. [N. S.] Q. B. 515 ; *Liggins* v. *Juge*, 7 Bing. 682 ; *Crossley* v. *Lightowler*, L. R., 2 Ch. App. 478.) The question of abandonment is one as to the intention of the parties. If it is clear that they intended to substitute one easement for another, or to abandon the old easement, their acts in pursuance of such intention will operate to extinguish the easement. (*Pope* v. *Devereux*, 5 Gray, 409 ; *Curtis* v. *Noonan*, 10 Allen, 406, 409 ; *Queen* v. *Chorley*, 12 A. & E. [N. S.] 515, 519 ; *Steere* v. *Tiffany*, 13 R. I. 568, 570 ; *King* v. *Murphy*, 140 Mass. 254 ; *Crossley*

v. *Lightowler*, L. R., 2 Ch. App. 482, 483; *Vogler* v. *Geiss*, 51 Md. 410, 411; *Dyer* v. *Sanford*, 9 Metc. 402; *Liggins* v. *Juge*, 7 Bing. 688; *Morse* v. *Copeland*, 2 Gray, 304, 305.) Any joint act, or act of one party with the consent of the other, which is inconsistent with the continuance of the easement, works an extinguishment thereof. (*Cartwright* v. *Maplesden*, 53 N. Y. 622; *Lattimer* v. *Livermore*, 72 id. 174, 182; *Pope* v. *O'Hara*, 48 id. 446, 447; 3 Kent's Com. 449.) It is not material, in the application of this rule, whether the easement was created by deed or by prescription. (*Curtis* v. *Noonan*, 10 Allen, 406; *Morse* v. *Copeland*, 2 Gray, 302; *Dyer* v. *Sanford*, 9 Metc. 395; *Cartwright* v. *Maplesden*, 53 N. Y. 622; *Lattimer* v. *Livermore*, 72 id. 174.) In any event the instrument, executed and delivered by Mrs. Higgins in July, 1863, was sufficient to form the basis of an adverse possession, which, continued under a claim of right for twenty years, ripened into a good title. (*Sands* v. *Hughes*, 53 N. Y. 287, 295, 296; *Hilton* v. *Bender*, 2 Hun, 1; *Humbert* v. *Trinity Church*, 24 Wend. 587; *La Frambois* v. *Jackson*, 8 Cow. 589; *Reformed Church* v. *Schoolcraft*, 65 N. Y. 134; *Northrup* v. *Wright*, 7 Hill, 476, 488; *Townsend* v. *McDonald*, 12 N. Y. 381, 392; *Smyles* v. *Hastings*, 22 id. 217; *Wiggins* v. *McCleary*, 49 id. 346; *Nicholls* v. *Wentworth*, 100 id. 455; *Wood* v. *Warren*, 82 id. 265, 270; *McFarlon Case*, 43 N. J. Law, 606, 630; *Jordan* v. *Long*, 22 S. C. 159, 167.) The undisputed facts, showing an actual abandonment of the easement by the grantors of the plaintiff, and an adverse use or enjoyment, under claim of right, which had been open, visible, notorious and uninterrupted for more than twenty years, were sufficient to charge the plaintiff with notice thereof, so that the legal presumption of a grant to the adverse claimant became conclusive. (*Ward* v. *Warren*, 82 N. Y. 265, 268; *Nicholls* v. *Wentworth*, 100 id. 455; *Hammond* v. *Zehner*, 21 id. 118, 120; *Clark* v. *Gilbert*, 39 Conn. 94, 97; *Perrin* v. *Garfield*, 37 Vt. 310, 311; *Humbert* v. *Rector, etc.*, 24 Wend. 587, 605, 606; *White* v. *Chapin*, 12 Allen, 516; *Parker* v. *Foote*, 19 Wend. 309; *Corning* v.

*Gould*, 16 id. 531. The written instrument was sufficient, the defendant and his grantors being in exclusive possession under it as a specific title and claiming adversely, to avoid under the champerty act, all of the subsequent grants of the easement in the plaintiff's claim of title. (3 R. S. [7th. ed.] 2196, § 147; *Nellis* v. *Munson*, 13 State Rep. 825, 829; *Sands* v. *Hughes*, 53, N. Y. 287, 295, 296; *Christie* v. *Gage*, 71 id. 189; *Towle* v. *Remsen*, 70 id. 304, 317; *Thurman* v. *Cameron*, 24 Wend. 87; *Jackson* v. *Preston*, 13 Johns. 407.) The court erred in striking out the evidence of declarations of Jonas Clock while he was the owner and in possession of the property, made after consulting counsel in reference to his right to the easement, to the effect that "he has supposed he had the right to lead the water from that spring, but found out that he had no right, and went home and gave it up." (*Chadwick* v. *Fonner*, 69 N. Y. 404, 407; 6 Hun, 544, 545; *Abeel* v; *Van Gelder*, 36 id. 513, 516; *Pitts* v. *Wilder*, 1 id. 525; *Jackson* v. *Bord*, 4 Johns. 230, 231, 234; *McKellip* v. *McIlheny*, 4 Watts, 317, 323; *Strickler* v. *Todd*, 10 Serg. & Rawle, 63, 74: *Dorsey* v. *Dorsey*, 3 Har. & John. 410, 426; *Warshower* v. *Randall*, 109 Mass. 586; *King* v. *Murphy*, 140 id. 254, 255, 256; *Vrooman* v. *King*, 36 id. 482; *Spaulding* v. *Hallenbeck*, 35 N. Y. 204, 207; 1 Greenl. on Ev. § 109.)

*Nathaniel C. Moak* for respondent. The grant of water rights contained in the deed of Snell to Higgins was not personal to the grantee therein, but was for the benefit of the principal estate and its enjoyment, and became appurtenant thereto and would have subsequently passed with said estate, even in the absence of words of grant. (*Nellis* v. *Munson*, 13 N. Y. St. Rep. 825; *Borst* v. *Empie*, 5 N. Y. 33, 39; Washb. Eas. 25, 26, m. p.; *Burr* v. *Mills*, 21 Wend. 290, 294, 295; *Wakely* v. *Davidson*, 26 N. Y. 394; *George* v. *Cox*, 114 Mass. 382, 387; *Manderbach* v. *Bethany*, 109 Penn. St. 231, 234, 235.) The release, being unrecorded, is void as against a subsequent purchaser in good faith and for valuable consideration, whose conveyance is first recorded. (*Nellis* v. *Munson*, 13 N. Y.

St. Rep. 825; 1 R. S. 702, § 38, m. p.; 1 id. 756, § 1; *Westbrook* v. *Gleason*, 89 N. Y. 641; *Bacon* v. *Van Schoonhoven*, 87 id. 446; *Wood* v. *Chapin*, 13 id 509; *Decker* v. *Boice*, 83 id. 215, 220–221; *Clark* v. *Mackin*, 95 id. 346, 350; *Van Keuren* v. *Corkins*, 66 id. 77; *Bank* v. *Frank*, 45 N. Y. Supr. Ct. 410–412; *Riley* v. *Hoyt*, 29 Hun, 114, 115; *Adams* v. *Conover*, 87 N. Y. 429.) It having been proved, and undisputed, that plaintiff paid value on his purchase, the burden of proof, or of showing that he had notice of defendant's alleged equities, or of his want of good faith, was shifted upon defendant. (*Hart* v. *Potter*, 4 Duer, 458, 461; *Dalrymple* v. *Hillenbrand*, 62 N. Y. 611; *Cowing* v. *Altman*, 71 id. 435; *Goodman* v. *Harvey*, 4 Ad. & El. 870; Byles on Bills, 118; *Wormuth* v. *Somburger*, 17 N. Y. Weekly Dig. 162; *Collins* v. *Gilbert*, 94 U. S. 754, 755; 1 Daniel's Neg. Inst. [3d ed.] § 819.) The easement granted by Snell to Higgins, and which became, before the cause of action herein arose, vested in plaintiff, still continued to exist in favor of said plaintiff, as the owner of said principal estate granted to Higgins, even though it had not been used and enjoyed by the predecessors in the title of plaintiff. (Wash. on Ease. [4th ed.] 717–720; *White's Bank* v. *Nichols*, 64 N. Y. 75; *Doe* v. *Butler*, 3 Wend. 149, 153; *Smyles* v. *Hastings*, 22 N. Y. 217, 224; 24 Barb. 44, 49; *Arnold* v. *Stevens*, 24 Pick. 106, 111; *Jewett* v. *Jewett*, 16 Barb. 157; *Marvin* v. *Brewster*, 55 N. Y. 538, 555; Angell on Watercourses, § 252.) Churchill took title to the premises on which the spring was situate, subject to the easement granted to Higgins, and created in favor of plaintiff's premises, he having notice by the record of deed to Higgins, even though not specifically excepted in deed to himself. (*Nellis* v. *Munson*, 13 N. Y. St. R. 825; *Marvin* v. *Brewster*, 55 N. Y. 538, 556; *Trustees* v. *Lynch*, 70 id. 449, 450; *At. Dock Co.* v. *Leavitt*, 54 id. 35, 36, 42, 43; *Winfield* v. *Henning*, 21 N. J. Eq. 188; 2 Devlin on Deeds, § 1000; *Cambridge Valley Bk.* v. *Delano*, 48 N. Y. 327, 336; Wade's Law of Notice [2d ed.] §§ 310–313; *Westervelt* v. *Wyckoff*, 32 N. J. Eq. 188;

*Caruth* v. *Grisby*, 57 Tex. 259 ; *Briggs* v. *Palmer*, 20 Barb. 392 ; *Birdsall* v. *Tieman*, 12 How. Pr. 551.) Adverse possession could not be predicated of the possession of Snell, the original grantor, or of any act done by him. (*Robinson* v. *Kinne*, 70 N. Y. 147 ; *Trustees, etc.* v. *Lynch*, Id. 440 ; Angell on Water-courses, § 219.) The objections taken to evidence as to damages fell when defendant agreed upon or consented to the amount of damages. (*Marclay* v. *Schultz*, 29 N. Y. 346, 356 ; *Yates* v. *N. Y. C. R. R. Co.*, 67 id. 100, 103 ; *Turner* v. *Kowenhoven*, 100 id. 115, 120, 121.) The court properly directed a verdict for plaintiff. The mere fact that the sole evidence as to a material fact in issue in an action is the testimony of a party, where there is no conflict in the evidence or circumstances from which an inference against the fact so testified to can be drawn, does not require the submission of the question to the jury. (*Kelly* v. *Burroughs*, 102 N. Y. 93, 95, 96.)

EARL, J. This action was commenced to recover damages for the wrongful interference by the defendant with plaintiff's easement and right to draw water from a certain spring on defendant's land, known as the Kingsbury spring. The material facts, as they appeared upon the trial, are as follows : Prior to the 12th day of August, 1862, one Edwin Snell was the owner of the land upon which the Kingsbury spring is located, and on that day he with his wife conveyed by warranty deed to one Francis A. E. Higgins a portion of such land, which deed contained the following clause ; " The said parties of the first part also grant to said party of the second part the right to lay any kind of pump logs to convey water from the spring above the site of the old barn on the premises purchased by the above-named Edwin Snell of W. & C. Kingsbury, and to conduct the same from said spring down along the creek running therefrom until the same can be carried in a straight line to the premises hereinbefore conveyed to the party of the second part; said party of the second part, however, is not to have and use from said spring more than half an inch stream

of water, and in digging to lay or repair said logs, said party of the second part is to replace the ground and smooth the same over so as not to do any more injury than necessary and indispensable." There was at the same time upon the same land owned by Snell another spring called the Railroad spring from which the railroad company had the right to conduct water through logs. On the 1st day of July, 1863, Mrs. Higgins, not having made any use of the Kingsbury spring under her grant, executed under seal the following instrument, which was also signed by Edwin Snell and attested by two witnesses: " For the consideration of seventy-five dollars I agree to relinquish all my right, title and interest held by me in a certain spring owned by Edwin Snell, known as the Kingsbury spring; also said E. Snell agrees to allow me to draw water from pump logs running across lots to his house, as long as there shall be water in said logs." The pump logs referred to in that instrument were the logs running from the Railroad spring near the house of Mrs. Higgins to the railroad; and soon after the execution of that instrument, she tapped the logs from the Railroad spring and conducted water therefrom to her premises; and water was thus conducted for many years, as long as the pump logs remained there, or until the railroad company changed the mode of drawing water from that spring. After the occupants of the Higgins premises ceased to obtain water from the Railroad spring, they obtained it by permissiom from. a spring upon neighboring premises, and never from the Kingsbury spring.

This action was commenced on the 20th day of December, 1883, and prior to that time no person holding under the grant to Mrs. Higgins ever conducted water from or used the water of the Kingsbury spring, and no attempt whatever was made to use the easement granted by Edwin Snell prior to October, 1883. During all the time Edwin Snell and those who held under him conducted water from the Kingsbury spring, and during portions of the time used the whole thereof.

The premises conveyed by Edwin Snell to Mrs. Higgins

were subsequently conveyed by her by warranty deed containing the same description of the premises and of the easement to conduct water from the Kingsbury spring as was contained in the deed to her; and by several mesne conveyances, the title to the same premises with the same description came to the plaintiff. The premises owned by Edwin Snell containing the Kingsbury spring were conveyed by him and his wife to John B. Churchill by warranty deed, dated the 30th day of March, 1867, which deed contained this reservation: "The parties of the first part hereby except and reserve the right and privilege at any time to lead water through a half-inch pipe" from the Kingsbury spring to the house in which they lived. Subsequently the following conveyances of the same premises were made: On the 3d day of December, 1867, by Churchill and wife to James Bates; on the 29th day of July, 1875, by Bates and wife to Nathan Briggs; on the 3d day of December, 1876, by Briggs and wife to the First National Bank of St. Johnsville, and on the 1st day of March, 1881, by the bank to the defendant Levitt. These conveyances were all by warranty deeds which contained the same reservation as to the use of water from the spring to be drawn in a half-inch pipe, and none of the deeds contained any reference whatever to the easement granted by Edwin Snell to Mrs. Higgins.

This easement having been acquired by Mrs. Higgins by grant could not be lost by mere non-user for any length of time. It could be lost by adverse user or possession by the owner of the servient tenement, and the easement could be lost and extinguished by abandonment in some of the modes or by some of the means recognized in the law. Non-user for a period of twenty years, under such circumstances as show an intention to abandon and give up the easement, is sufficient to extinguish it; and even an abandonment for a shorter period, under such circumstances as show an intention to give up and release an easement, which is acted upon by the owner of the servient tenement so that it would work harm to him if the

easement were thereafter asserted, would operate to extinguish the easement.

Here there is no doubt of the actual intention of Mrs. Higgins to abandon the easement acquired by her from Edwin Snell. She expressly agreed to relinquish it for the consideration of $75 in money and the right to draw water from other logs for an indefinite time; and that agreement was acted upon for more than twenty years. During that time the defendant, and others through whom he claims, purchased the servient tenement by warranty deeds without any notice whatever of any claim of an existing easement under the deed to Mrs. Higgins in the premises conveyed. These facts are undisputed, and upon them the trial court should have held and ruled, as matter of law, that the easement was abandoned and extinguished. (*Vogler* v. *Geiss*, 51 Md. 407; *Steere* v. *Tiffany*, 13 R. I. 568; *Dyer* v. *Sanford*, 9 Met. 395; *Curtis* v. *Noonan*, 10 Allen, 406; *Morse* v. *Copeland*, 2 Gray, 302; *Pope* v. *Devereux*, 5 Gray, 409; *King* v. *Murphy*, 140 Mass. 254; *Queen* v. *Chorley*, 12 Ad. & El. [N. S.] 515; *Crossley* v. *Lightowler*, L. R., 2 Ch. App. 478, 482; *Cartwright* v. *Maplesden*, 53 N. Y. 622; *White's Bank* v. *Nichols*, 64 id. 65.) In Washburn on Easements ([3d ed.] at page 661 and subsequent pages), the author says: " The owner of an easement may destroy his right to the same by actually abandoning the right as well as the enjoyment, especially if a third party become interested in the servient estate after such act of abandonment; and it would operate unjustly upon him if the exercise of the easement were resumed in favor of the dominant estate. It is not easy to define, in all cases, what would be such act of abandonment as would destroy a right of easement, and each case seems to be a matter for a jury to determine. But nothing short of an intention so to abandon the right would operate to that effect, unless other persons have been led by such acts to treat the servient estate as if free of the servitude, and the same could not be resumed without doing an injury to their rights in respect to the same. And in this it is not intended to embrace questions which may arise

from a mere non-user of an easement." "The question of abandonment is one of intention, depending upon the facts of the particular case. But time is not a necessary element in a question of abandonment. A cesser to use, accompanied by an act clearly indicating an intention to abandon the right, would have the same effect as a release, without reference to time." "Although an abandonment is sometimes inferred from a non-user for twenty years, it seems to depend less upon the duration of the time than the acts which accompany the ceasing to use the easement for its effect upon the right. The length of time that this is continued is one of the elements from which the intention to abandon or retain the right is inferred. * * * The cesser to use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as- a release, without any reference to the time during which such cesser has continued." And the text of the learned author is well supported by the authorities which he cites.

Here, after an abandonment by Mrs. Higgins, Edwin Snell conveyed the water from this spring to two houses upon his own premises, and, with the water running from the spring through the pipes to those houses, the premises have several times been bought and sold. There was a non-user of the easement for upwards of twenty years, and a substituted easement was used during a large portion of that time.

Under such circumstances, we think, there was not even a question of fact for the jury; but that it was the duty of the court to rule, as matter of law, that the easement was extinguished.

The learned counsel for the respondent places great stress upon the fact that the instrument executed by Mrs. Higgins, and dated July 1, 1863, was not recorded, and he claims that it could, therefore, have no operation as against the subsequent conveyances of her premises to parties who purchased for a valuable consideration, without notice of the instrument, and placed their deeds upon record. This contention might be well founded if the extinguishment of the easement depended

solely upon that instrument, as it would have been void as against subsequent conveyances first recorded. (1 R. S. 762, § 38; id. 756, § 1; *Nellis* v. *Munson*, 13 N. Y. State Rep. 825.) But if there had been no instrument whatever, and the same agreement had been made, the same consideration paid and the same acts done indicating an unequivocal intention to abandon the easement, it would have been just as effectually extinguished; and the easement having thus become extinguished, there was nothing for the deeds under which the plaintiff holds, or for the recording acts to operate on. The easement ceased to have any existence, whatever, and could not be the subject of a conveyance; having been extinguished it could be brought into existence again only by the act of the owner of the servient estate or by prescriptive use. The instrument is of importance only as showing, with the other facts, an intention to abandon the easement.

We are, therefore, of the opinion that the learned court below fell into error, and that the judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.