(73 App. Div. 383.)

## POTTER v. BOYCE.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

DEEDS—CONSTRUCTION—DESCRIPTION—FEE IN STREET.

Three persons owning land in common had it laid out in lots and blocks, with intervening streets, not actually opened, and the fee to which remained in the owners. In effecting a division of some of the land among themselves, a block on the east side of P. street was conveyed to one co-tenant by a description including the fee to the middle of said street. In conveying the block on the opposite side of said street to another co-tenant, plaintiff's grantor, it was described as commencing at the corner of B. road and H. street, and running southeasterly "along the northeasterly side" of H. street, about 535 feet, to Phineas street; thence about 246 feet, to a certain alley; thence northwesterly along the southwesterly side of said alley, about 513 feet, to B. road; thence westerly, "along the southeast side" of said B. road, to the place of beginning,—"said land being distinguished in a map as surveyed," etc. *Held* that, the fee being in the owners, the point of beginning at the intersection of H. street and B. road was the center of the street, and the description being consistent with a conveyance of the fee, with the exception of the provisions that the lines ran along the "sides" of the streets, the deed carried the fee to the center of the street.

Laughlin, J., dissenting.

Appeal from special term, New York county.

Bill by E. Clifford Potter against Caroline M. Boyce. From a decree for defendant (73 N. Y. Supp. 764), plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William Rumsey, for appellant.
John C. Shaw, for respondent.

INGRAHAM, J. This action was for the specific performance of a contract for the sale of real property, by which the plaintiff agreed to sell, and the defendant to purchase, a plot of ground on the southerly side of 126th street, 150 feet west of Amsterdam avenue. The defendant claimed that the plaintiff was not able to convey a marketable title, and the court below so decided. There is no dispute as to the facts, the question depending upon whether a deed executed by Jacob Schieffelin and wife and others to Thomas Buckley, dated April 28, 1811, conveyed the westerly half of a street laid out upon a map in relation to which this property was conveyed, and known as "Phineas Street." It seems that a large piece of property which includes the premises in question was conveyed to Jacob Schieffelin and John R. Lawrence and Thomas Buckley, as tenants in common, April 8, 1806. While this property was thus held in common, a map of it was made and filed in the office of the register of the county of New York, in which it was laid on in lots, the lots being numbered and bounded upon certain streets, also laid on the map. The three persons who owned this land in common seem to have divided it among themselves by various conveyances, two of which are dated August 28, 1811. In one of these conveyances two of the owners conveyed their undivided interest in one of the blocks into which the plot of

land was divided to the third, Thomas Buckley, and it is this deed that presents the question in this case.

By this deed, Schieffelin and wife and Lawrence and wife conveyed to Buckley the block of ground as laid out upon the map bounded by Bloomingdale road, Hamilton street, Phineas street, and Blackberry alley. By a deed bearing even date therewith, Buckley and wife and Lawrence and wife conveyed to Schieffelin an adjoining block on the other side of Phineas street. There are in the record a number of other deeds, some between these tenants in common dividing the property among themselves, and some in which the tenants in common united in conveying property laid out upon this map to third parties. In all of the deeds, except in this deed in question, the property was conveyed by the numbers of the lots as appearing upon the map, there being no description of the property conveyed by metes and bounds. The treatment of the property by the proprietors of the lots as being conveyed by the map would indicate an intention to convey to the center of the abutting streets. By the conveyance from Buckley and wife and Lawrence and wife to Schieffelin, dated and acknowledged upon the same day that the deed of Schieffelin and wife and Lawrence and wife to Buckley was dated and acknowledged, and which conveys to Schieffelin a block of ground on Phineas street adjoining the block conveyed to Buckley by his cotenants, the description conveyed the easterly half of Phineas street. It is claimed by the defendant, however, that the deed of Schieffelin and Lawrence to Buckley, made upon the same day, excluded the westerly half of Phineas street, leaving the fee of this street still held in common.

These tenants in common having united to convey the easterly half of Phineas street to one of their number in severalty, it would seem to follow that they did not intend to reserve the fee of the westerly side of Phineas street. If in dividing this property it appeared that it had been the custom of the co-tenants to reserve the common title to all of the streets, there might be some object in excluding the fee of Phineas street from the effect of this conveyance; but where in every other instance, when the parties attempted to divide the property which they held in common, grants were made which would include the fee of the abutting streets, there certainly is the strongest presumption that it was intended that the fee of Phineas street upon which the property conveyed to Buckley abutted should pass to the proprietor who had become the owner in fee of the adjacent land. Whether or not the fee of an adjacent street passes by a conveyance of abutting property is a question of intention, and the courts are justified in looking at the situation of the property and the cotemporaneous acts of the parties, including the conveyances they have made of adjoining property, as well as the description contained in the conveyance in question, to determine what was the intention of the parties making the conveyance. U. S. v. Appleton, 1 Sumn. 492, 501, Fed. Cas. No. 14,463. Of course, if the property is conveyed by metes and bounds which expressly exclude the street, as where a piece of property is expressly bounded upon the side of a street, so that by no construction can the fee of the street be included, the

court is not justified in giving to such description a construction
which would convey property outside of the limits of the property
expressly conveyed. But where there exists an ambiguity, or there
are two descriptions which are to some extent contradictory, by one
of which the fee of the street would be included, and the other, stand-
ing alone, would indicate an intention to exclude the fee of the street,
effect will be given to the description which, from the cotemporaneous
acts of the parties and the situation of the property as it existed at
the time of the conveyance, appears best to carry into effect the in-
tention as thus ascertained.

The actual situation in this case when this grant was made was
that three persons owned a tract of land as tenants in common, which
they had caused to be surveyed and laid out in lots and blocks, with
intervening streets. Commissioners had been appointed to make a
map or plan of this part of the city of New York, and to lay out
streets and avenues therein (Laws 1807, c. 115), and streets in this
locality had been laid out which were not in accord with the streets
as delineated upon this map; the map or plan showing such streets
having been made and filed April 1, 1811, prior to this conveyance.
Valentine's Laws, p. 809, relating to the city of New York. It is
quite evident that these streets were not at the time this conveyance
was made actually existing streets, or, at least, there is no evidence
that they were ever actually opened or used as such. The owners
of the property including the fee of these streets concluded to divide
certain portions of the property so that several blocks should be held
in severalty; and, to carry out what appears to have been that in-
tention, two of the tenants in common united to convey to Buckley
one block of land, and Buckley and one of his co-tenants united to
convey to another co-tenant an adjoining block of land. Separating
those two blocks, there was a street laid out upon the map known
as Phineas' street. To the tenant in common who received a convey-
ance of a block on the east side of Phineas street it was conveyed by
a description which would include the easterly half of Phineas street.
By the deed which conveyed to Buckley the block on the west of
Phineas street the description was as follows:

"All that certain piece or parcel of land situate, lying, and being at Man-
hattanville, in the Ninth ward of the city of New York, commencing at the
corner of the Bloomingdale road and Hamilton street, and running thence
southeasterly along the northeasterly side of said Hamilton street, about
five hundred and thirty-five (535) feet, to Phineas street; thence northeasterly
along the northwest side of said Phineas street, about two hundred and
forty-six (246) feet, to Blackberry alley; thence northwesterly, along the
southwesterly side of said Blackberry alley, about five hundred and thirteen
(513) feet, to the Bloomingdale road; thence westerly along the southeast
side of said Bloomingdale road, about two hundred (200) feet, to the place
of beginning,—the said land being known and distinguished in a map of
Manhattanville as surveyed and laid out by Adolphus Loss, dated the 15th
day of September, 1806, by lot numbers 10 to 42 inclusive on Hamilton
street, numbers 19 to 27 inclusive on Phineas street, numbers 37 to 51 in-
clusive on Bloomingdale road."

The question is whether there was included in this description the
westerly half of Phineas street. The parties owning the fee of Bloom-
ingdale road and Hamilton street, and commencing their line at the

corner of Bloomingdale road and Hamilton street, that point would have been undoubtedly at the intersection of the center line of those two streets; for, as was said by Judge Allen in Bank v. Nichols, 64 N. Y. 65: "Although the highway is in one sense a monument, it is regarded as a line, and the center of the highway is in such case regarded as the true boundary indicated." The line from that point runs southeasterly along the northerly side of said Hamilton street to Phineas street. The line running to Phineas street would clearly carry that line to the center of the street, the boundary of the block that had been on the same day conveyed by the tenants in common to one of the tenants in severalty. The line from thence runs northeasterly along the northwest side of said Phineas street, about 246 feet, to Blackberry alley and Bloomingdale road, to the point and place of beginning, and the description then proceeds: "The said land being known and distinguished in a map of Manhattanville as surveyed and laid out by Adolphus Loss," etc., by lots numbers 19, 21, 23, 25, and 27 on Phineas street. The property to be conveyed is thus referred to and located on the block of ground laid out upon that map, surrounded by these streets created by the parties to the agreement by the filing of the map, and the description would all be entirely consistent as including the fee of the abutting streets but for the fact that the lines, after stating the point of beginning, ran along the side of the street, instead of merely along the street. The uncertainty has arisen solely from the insertion in the description of the provision that the line ran along the sides of these streets instead of along the streets. In stating the boundaries of the property conveyed, they started at a fixed point said to run along the side of the street, and then the property is described as being all the property in a block as laid out upon this map. This conveyance was made more than 90 years ago. There is no evidence that the title of the grantee in this conveyance or his successors in title to the fee of this street has ever been questioned. There could be no possible object in these grantors retaining to themselves an undivided interest in the fee of one half of Phineas street, after having on the same day conveyed to another of their co-tenants their interest in the fee of the other half of Phineas street; and I think the fact of their coupling with the description of the property a statement that what was intended to be conveyed was this whole block of ground thus surrounded by these streets shows that it was the intention to include the fee of the streets, although the formal description by metes and bounds, if standing alone, might be said to exclude it. The property is sold entirely by reference to the map. But for the map, it would be impossible to locate any of these streets; and by a reference to the map, and selling it by the map, it seems to me clear that the fee of these streets was included. Bissell v. Railroad Co., 23 N. Y. 61; Perrin v. Same, 36 N. Y. 121.

It is hardly necessary to examine the cases which have discussed the vexed question as to just what form of description will include the fee of a street in a conveyance of the abutting property. In each of the cases to which our attention has been called in which the fee of the road has been held to be excluded the description was quite

different from that in this case. In Deering v. Riley, before this
court in 38 App. Div. 164, 56 N. Y. Supp. 704, and the court of ap-
peals in 167 N. Y. 184, 60 N. E. 447, the defendant was a squatter,
claiming no title to the property, and the plaintiff was the grantee
of one of the tenants in common who united in the conveyance of
this property in question. The property was a part of Bloomingdale
road, a public road which appears to have been open to the public
at the time of the conveyance, and the question arose under a con-
veyance made by all three of the tenants in common of this piece of
property to one Brass of a piece of property on the easterly side of
Bloomingdale road. The property conveyed to them commenced on
the northeast corner of Blackberry alley, on the southeasterly side of
Bloomingdale road, and thus the starting point expressly excluded
the fee of Bloomingdale road; and it was because of that fact that
no part of Bloomingdale road was included in the conveyance, as
the northeasterly corner of Blackberry alley must, the court of ap-
peals said, of necessity, be deemed to be where its northerly line in-
tersects the easterly line of Bloomingdale road, a description dis-
tinctly different from that in question. If the starting point in the
description in this case had been on the easterly side of Blooming-
dale road and the north side of Hamilton street, and the line had run
thence to the west side of Phineas street, a different question would
be presented. But here the line commenced on the corner of these
two streets, and, no mention having there been made of the side of
the streets, the inference would follow that the point of commence-
ment was the intersection of the middle of the streets, and the line
then runs, not to the side of Phineas street, but to the street, which
would carry it to the center of the street, with the further reference
to the map, indicating an intention to convey, by the map, from which
only the boundaries could be obtained, and a conveyance by the map
would include the fee of the street. The contemporaneous acts of
the parties and the situation of the property at the time the con-
veyance was made convince me that the intent was to include the fee
of the street, and there is nothing in the description which prevents
us from giving effect to that intention. From this it follows that
the plaintiff has a good title.

I think, therefore, that the judgment appealed from should be reversed,
with costs to the appellant; and, as the facts are all conceded, judg-
ment should be directed for the plaintiff for a specific performance
of the contract, with costs. All concur, except LAUGHLIN, J., who
dissents.

LAUGHLIN, J. (dissenting). The action was brought for the
specific performance of a contract by which the defendant agreed to
purchase of the plaintiff certain lots on the southerly side of 126th
street west of Amsterdam avenue. The defendant refused to complete
the purchase upon the ground that the plaintiff's record title to part
of the premises was not good. It is not claimed that plaintiff has
acquired by adverse possession, and the sole question presented by
the appeal is whether the plaintiff owns the fee to the northwesterly
half of Phineas street abutting on the lots in question as said street

was originally plotted and surveyed for the owners by Adolf Loss. On the 8th day of April, 1806, a large tract of land in this vicinity, including the lots in question and the premises within the lines of Phineas street, was owned by one Mollenaor, and on that day he conveyed the same to Jacob Schieffelin, Thomas Buckley, and John R. Lawrence as tenants in common. They employed Loss, a surveyor, to make a map subdividing the premises into lots and delineating streets thereon, and they caused this map to be filed. They sold many lots upon the different streets, and finally upon the 28th day of August, 1811, they partitioned their remaining lots. Schieffelin and Lawrence on that day executed a conveyance to Buckley in furtherance of the partition agreement, and it is conceded that the question of law which we are called upon to determine is whether by the description in that deed the fee to that part of Phineas street adjacent to the lots in question passed to the grantee. The material part of the description is as follows: Commencing at the corner of the Bloomingdale road and Hamilton street; running thence southeasterly along the northeasterly side of said Hamilton street, about 535 feet, to Phineas street; thence northeasterly along the northwest side of said Phineas street, about 246 feet, to Blackberry alley; thence northwesterly along the southwesterly side of said Blackberry alley, about 513 feet, to the Bloomingdale road; thence westerly along the southeast side of Bloomingdale,—said land being known and distinguished on a map of Manhattanville as surveyed and laid out by Adolphus Loss, dated 15th September, 1806, by lots Nos. 10, etc., on Hamilton street, Nos. 19, 21, 23, 25, and 27 on Phineas street, and Nos. 37, 39, etc., on Bloomingdale road. I think that the language employed in this description necessarily excludes the fee. The language is plain and unambiguous, and leaves no room for the application of the presumption that the owner intended to convey the fee to the middle of the street. It is claimed that the point where the description commenced is left sufficiently in doubt to warrant the application of this presumption which ordinarily prevails. I am in favor of giving that presumption full force and effect, but I fail to see how it can be applied here without overruling many decisions of the court of appeals, and unsettling the law as it has been long administered by our courts. It is conceded that the grantor and the grantees in this conveyance owned the fee to the center of the Bloomingdale road, and also the fee to the other streets specified in the description. It is contended that the point of commencement is the point of intersection of the center line of Hamilton street with the center line of the Bloomingdale road. It will be observed that the description commences "at the corner of Bloomingdale road and Hamilton street." I think the point where the center lines of two streets or highways intersect is not the corner of the streets or roads. The ordinary meaning of the word in relation to streets and highways is that it refers to the point where the exterior lines join or intersect. Hamilton street commences at Bloomingdale road, and I think it forms two corners with that road,—a southeasterly and a southwesterly corner. The only doubt in my mind arising on the descriptive words is as to which corner is intended; but this is readily answered by the

subsequent parts of the description. The description continues from the corner as follows, "and running thence southeasterly along the northeasterly side of Hamilton street," and the final boundary is "thence westerly along the southerly side of Bloomingdale road, about two hundred feet, to the place of beginning." It thus appears that the starting description is along the northeasterly side of Hamilton street, and the returning description is along the southerly side of Bloomingdale road. These boundary lines necessarily fix the southeasterly corner of Bloomingdale road and Hamilton street as the corner which was intended to be designated as the point of commencement.

I think it is as well settled in this state as any rule of law can be that where a conveyance expressly provides that the boundary line runs along a particular side of a street it means the exterior line of the street on that side, and excludes the fee. Blackman v. Riley, 138 N. Y. 318, 34 N. E. 214; Deering v. Riley, 167 N. Y. 184, 60 N. E. 447; English v. Brennan, 60 N. Y. 609; Insurance Co. v. Stevens, 87 N. Y. 287, 41 Am. Rep. 361.

Following the first boundary line, which, if these views are sound, is the northeasterly line of Hamilton street, we find that the conveyance recites that this boundary runs "about five hundred and thirty-five feet to Phineas street; thence northeasterly along the northwest side of said Phineas street, about two hundred and forty-six feet, to Blackberry alley." Here it will be observed that the boundary line at Phineas street is the northwest side of that street, which I think is equivalent to the northwest line of the street. On the map to which the description relates along the northeasterly line of Hamilton street, and about midway of the block, we find the figures "535," which are undoubtedly to indicate the distance between the Bloomingdale road and Phineas street; and, by a computation from the figures on the map which we think indicates the length and width of the lots on Phineas street, we find that they correspond with the distance given in the description as the length of the boundary line on that street.

It is urged that the important part of this description is the reference to the lots and lot numbers. That is important, and, of course, the rule is well settled that a conveyance by lots where the grantor owns the fee to the center of a street passes such fee. But, where the conveyance by metes and bounds excludes the fee, I do not understand that such description is overcome by a subsequent statement in the conveyance that it is intended to convey certain lots as plotted. In the Deering Case, supra, and in many other cases, the conveyance was both by metes and bounds and by reference to lot numbers, and the description by metes and bounds was deemed controlling.

There is nothing in the surrounding circumstances sufficiently controlling to indicate a different intent from that evidenced by the language employed in the conveyance. It is true that in many instances the parties had previously conveyed by descriptions which carried the fee to the center of the streets; but they followed no uniform rule, as is manifest by the Deering Case, in which the court of appeals construed one of their conveyances which has been received in evidence

in this case as not conveying the fee. In 1807 they conveyed to the city the fee to Manhattan street. If we are able to speculate as to the intention of the owners, I think it is quite probable from this record that they intended to exclude the fee, and deemed that they would be all interested in the streets on account of the respective conveyances in partitioning their lands, and that some day they might desire to deed them to the city; but, as has been observed, the meaning of the language of the conveyance is plain, and it is free from ambiguity, and must be given effect regardless of whether or not it correctly expresses the intention of the grantors.

It follows that the judgment should be affirmed, with costs.