(73 App. Div. 394.)

In re MAYOR, ETC., OF CITY OF NEW YORK.

In re FAIRMOUNT PLACE.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

1. DEDICATION—STREETS—HOW ACCOMPLISHED.
Where the owner of land had it surveyed, and a plat made by which the land was laid out in certain lots and streets, and the plat was filed with the county clerk, and the owner sold some of the lots to plaintiff's grantor, but at the time of the sale the streets were not actually opened, nor any other lots sold, there was no dedication of streets to the public.[1]

2. SAME—DEED—DESCRIPTION.
Where land was platted into lots and streets, the fee to which was yet in the owner, a deed to plaintiff's grantor of certain lots, "being bounded and described as follows on said map: On the southeasterly side by Prospect street, as laid down on the map; on the southwesterly side by Waverly place," etc.,—conveyed the fee in the streets.

3. SAME.
Where the grantee of lots, a plat of which had been filed, took by a deed which conveyed the fee in certain streets, a deed by such grantee of the lots by the numbers designated on the map, and bounded on the map as follows: "Beginning at a point on the westerly side on Prospect street distant 50 feet northeasterly from the northerly corner of Prospect street and Waverly place; from thence running northwesterly, and parallel with said Waverly place, 150 feet; thence southwesterly, and parallel with Prospect street, 50 feet, to Waverly place," etc.,—was sufficient to include the fee to the streets, though the number of feet specified would carry it only to the side of the streets.

4. SAME—ADVERSE POSSESSION.
Where land was platted in lots and streets, and the streets were not actually opened, so that there was no dedication thereof, when a grantee of certain of the lots who took by deed conveying the fee in the streets erected a building on his lots, which encroached some two feet on the street, as designated on the plat, and the encroachment was maintained adversely for 50 years, the city had no right to the portion encroached on, and could not remove the encroachment without awarding substantial damages.

5. SAME—PRESUMPTION OF GRANT.
There being no evidence that any other lots were sold, or that other people acquired rights in the street, if necessary to support the occupant's title, the execution of a grant by the owner who filed the plat would be presumed.

O'Brien, J., dissenting.

---

[1] See Dedication, vol. 15, Cent. Dig. §§ 36, 37.

Appeal from special term, New York county.

Proceeding by the mayor, etc., of New York City, to acquire title to certain lands for the purpose of opening Fairmount place. From an order confirming the report of commissioners of estimate and assessment, William Edebohls and another appeal. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles P. Hallock, for appellants.
John P. Dunn, Asst. Corp. Counsel, for respondent.

INGRAHAM, J. The appellants, William Edebohls and Josephine Edebohls, are the owners of a piece of land on the corner of what has been known as Waverly place and Prospect street, in the Twenty-Fourth ward of the city of New York. This proceeding was taken to acquire title to the fee of the land laid out on the map hereafter referred to as a street called "Waverly Place." The commissioners have awarded to the owners of the fee of Waverly place a nominal award of $1, and this award has been confirmed by the special term; the question on this appeal being whether these appellants have any interest in the property taken in this proceeding which entitles them to a substantial award.

It seems that prior to the year 1850 one William Jarvis owned a plot of land in what was then the town of West Farms, Westchester county; that he caused this plot to be surveyed, and a map thereof made, by which the said plot was laid out in lots, with certain streets indicated thereon, one of which was Prospect street, and another Waverly place. Waverly place was indicated upon said map as being 50 feet in width, and there were laid out on said map three lots of 50 feet in width by 100 feet in depth, fronting on Waverly place and Prospect street. These lots were numbered, respectively, 111, 112, and 113, being on the northwest corner of Waverly place and Prospect street. This map was dated June 26, 1850, and filed in the office of the county clerk of the county of Westchester, December 11, 1850. Jarvis and wife conveyed these three lots to Albert Ayres by deed dated November 13, 1850, and recorded December 30, 1850. The description by which this property was conveyed was:

"All that certain lot, piece, or parcel of land situate, lying, and being in the town of West Farms, county of Westchester, and state of New York, being the lots known and designated by the numbers 111, 112, 113, on a map entitled 'Map of Fairmount, Upper Morrisania, County of Westchester, and State of New York,' made by Andrew Findlay, surveyor, dated Westchester, June 26, 1850, and filed in the office of the clerk of the county of Westchester, at White Plains, the premises hereby conveyed being bounded and described as follows on said map: On the southeasterly side by Prospect street, as laid down on said map, 100 feet; on the southwesterly side by Waverly place, as laid down on said map, 150 feet; on the northwesterly side by lot number 110, as laid down on said map, 100 feet; and on the northeasterly side by lot number 114, as laid down on said map, 150 feet,— be the said dimensions more or less."

On October 28, 1851, Ayres and wife conveyed the premises in question to William Hayward by a similar description; and in the year 1852 Hayward built a house upon the premises, and inclosed

the lot by a substantial fence, which building and fence have remained in that position to the present time. This building and fence extended into Waverly place, as laid down upon said map, 2 feet and $^{78}/_{100}$ of an inch, and as so inclosed and built upon the premises have been occupied by the appellants and their grantors from 1852 to the present time. In this proceeding the city attempts to take this strip of something over 2 feet in width and 150 feet in depth, which would involve the destruction or removal of the house upon the premises now occupied by the appellants; and this is an appeal from the determination of the commissioners that the appellants have no title or interest in the property included in the bed of this street upon which their house is erected, and are therefore not entitled to any award for the destruction of their house and the taking of the property which they have occupied for 50 years, upon the ground, as I understand it, that by the making and filing of this map there was a dedication of the street designated on this map as Waverly place; that the fee of Waverly place did not pass by the conveyance to the appellants; and that the city is entitled to acquire the fee of this street in this proceeding, which would include the destruction of the appellants' house and fence, for a nominal consideration.

There was no evidence before the commissioners that this street designated on a map as Waverly place had ever been opened or used, either by the public or the adjoining lot owners, prior to the year 1852, when the house upon the appellants' lot was built. There was therefore no evidence of any dedication to the public prior to the erection of the house on a portion of Waverly place. The streets, so far as appears, had not then been actually opened and used by the public, nor, so far as appears, had any of the lots been sold except to appellants' grantor. There is therefore nothing to show that prior to the erection of this building by Hayward, in 1852, there had been a dedication of the street to the public. By the conveyance from Jarvis to Ayres there was undoubtedly included in the property conveyed the fee of Waverly place. The lots were sold by reference to the map as lots Nos. 111, 112, and 113 on the map, and are described as being bounded on the southwesterly side of Waverly place as laid out by said map. We think there can be no doubt but that by this description Ayres acquired the fee of Waverly place, subject to the use of Waverly place by the owners of lots laid out upon said map. See Potter v. Boyce (decided herewith) 77 N. Y. Supp. 24, and cases cited. Ayres, having thus become the owner of these three lots, including the fee of Waverly place, conveyed them by map numbers to Hayward. He conveyed to Hayward the lots known and designated by Nos. 111, 112, and 113 on the map; thus referring especially to the premises conveyed as the lots specified, indicating an intention to convey by the map, in which the fee of the street would be included. Potter v. Boyce, supra. The description then continues:

"The premises conveyed being bounded as follows on the said map: Beginning at a point on the westerly side on Prospect street distant 50 feet northeasterly from the northerly corner of Prospect street and Waverly place; from thence running northwesterly, and parallel with said Waverly

place, 150 feet; thence southwesterly, and parallel with Prospect street aforesaid, 50 feet, to Waverly place; thence southeasterly, along and parallel with said Waverly place, 150 feet, to Prospect street; thence northeasterly, along and parallel with said Prospect street, 50 feet, to the place of beginning."

We think that this description was sufficient to include the fee of the street. It is the lots Nos. 111, 112, and 113 on the map that is conveyed, and they are bounded on the map by the subsequent description. This description commenced at a point 50 feet northeasterly from the northerly corner of Prospect street and Waverly place. It then runs northwesterly, and parallel with Waverly place, 150 feet; thence southwesterly, and parallel with Prospect street aforesaid, 50 feet, to Waverly place; thence southeasterly, along and parallel with said Waverly place, 150 feet, to Prospect street. This line runs, not to the side, but to the street, and carries the line to the center of the street. There is nothing in the description bounding the property conveyed by the side of the street, as in the cases relied on by the majority of the commissioners; but where the line runs to either of these streets it runs to the street, and the fact that the number of feet specified would carry it only to the side of the street is not sufficient to indicate an intention to exclude the fee of the street. A street, when described as the boundary of a piece of property conveyed, is regarded as a line, and that line is the center of the street (White Bank v. Nichols, 64 N. Y. 65); and when the boundary runs to and along the street it clearly includes the fee of the street.

Hayward, therefore, in 1852, when he built his house, owned the fee of Waverly place, which, however, was subject to an easement for the use of Waverly place which would inure to the benefit of all owners of lots upon the map in reference to which he had purchased this property. But, so far as appears, this street had not then been laid out, and its width depended upon an indication on the map that it was to be 50 feet in width. By the building of his house and fence, Hayward practically located the line. That location made the street at this point between 47 and 48 feet wide, instead of 50 feet, as would appear from the map. So that when the street was publicly laid out, so as to be used by the public, it would appear to have been laid out 47 feet and a fraction of a foot in width at this point, and that was the street that was actually used by the public from that time to the present. So far as appears, there has never been a claim by any one that this street as actually laid out and used by the public was not the street contemplated by the parties by the making and filing of this map. Thus, after 50 years of continuous use of this property by the appellants and their grantors, it would seem to be quite certain that neither the original owner of the property, who had made and filed this map, nor any of the grantees of the land laid out upon the map, could have compelled the appellants to remove their house erected upon these two feet of the land that had been originally laid out on the map as Waverly place. Their rights would clearly have been extinguished by nonuser, and the right to this two feet free from the easement acquired by adverse possession. The occupation of this two feet of Waverly place by the building of a house upon it and the fence inclosing it was adverse to the original grantor and

to the grantees of other lots, and as between these private individuals there was no objection to a destruction of the implied easement by nonuser followed by adverse possession for a period of 50 years. Snell v. Levitt, 110 N. Y. 595, 18 N. E. 370, 1 L. R. A. 414; Woodruff v. Paddock, 130 N. Y. 618, 29 N. E. 1021. If necessary to sustain a right thus acquired, the execution of a grant by the owner of the property who made and filed the map, and who had conveyed it to the appellants' grantor, would be presumed; and as there is no evidence that any other lots were sold, or that other persons acquired any right to this street, there is nothing to prevent the presumption of the execution and delivery of such a grant. The rights of the public depend upon a dedication of this street by the owners of the fee and its acceptance by the public. This two feet of Waverly place had never been actually laid out and used by any one as a street. There had therefore been no dedication of it to the public, and there is no evidence that the public had ever acquired the right to use Waverly place except as it was actually laid out and used. The only evidence of any public act in relation to the street is the filing of the map on February 5, 1880, and that map indicated that Waverly place was discontinued and closed by the commissioners. Thus, the only indication of public action was that the commissioners had determined to discontinue this street.

Subsequently the city laid out a street which coincided with Waverly place as originally laid out on the map, being 50 feet in width, and in this proceeding it seeks to acquire the title to the fee of all of this piece of land for the purposes of a street. If the views before expressed are correct, neither the city nor the public have ever acquired any right to use this portion of Waverly place inclosed by the appellants, nor is there any existing right in any of the owners of the adjacent lots to compel these appellants to restore the street to its original width as laid out upon the original map. That being so, it would seem to follow that, when the city attempted to take the appellants' house and property thus inclosed and occupied by him for nearly 50 years, they were bound to pay him the value of the property taken, and the commissioners were wrong in refusing to make a substantial award for the property. If this whole street had been closed immediately after the filing of the map, and had never been used by the public as a street, but had been exclusively used by the owner of the fee adversely to all others interested in the premises for 50 years, the city could not, in a proceeding to enforce the title to the land, claim that by virtue of the making and filing of this map 50 years before the public had acquired such an interest in the street that they could take it from those who had owned and occupied it without compensation; and where, instead of closing the whole street, only a portion of it had been inclosed by the owner of the fee and occupied for the period specified, there seems to be no reason why the public should now be entitled to the property without making compensation.

The order should therefore be reversed, with $10 costs and disbursements, and the proceeding sent back to the commissioners, with directions to ascertain and award to the appellants the value of this property. All concur, except O'BRIEN, J., who dissents.