### WOOLF v. WOOLF et al.

(Supreme Court, Appellate Division, First Department. April 8, 1909.)

**1. BOUNDARIES (§ 33*)—HIGHWAYS—PRESUMPTIONS.**

The presumption that one holding land bounded on a highway owns to the center thereof, subject to the easement of the public, may be rebutted by the use in the deed of such words as necessarily exclude the highway from the description; but where premises are bounded by a highway, without restricting words, the title to the center of the highway passes.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 33.*]

**2. BOUNDARIES (§ 20*)—HIGHWAYS.**

The owner of land filed a map thereof, on which lots and streets were laid out. He then conveyed lots as shown by the map, and described the boundary of the lots as beginning at a corner of designated streets, thence along one of such streets, and later along the other street. *Held* to convey to the center of the designated streets.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 123–130; Dec. Dig. § 20.*]

Appeal from Special Term, New York County.

Action by Mary J. Woolf against James W. Woolf and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PATTERSON P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Tallmadge W. Foster, for appellant.
Gilbert W. Minor, for respondents.

SCOTT, J. This appeal by plaintiff calls upon us to determine the proper construction and effect of a deed executed in 1856 by Thomas O. Woolf and others, ancestors of the plaintiff and the defendants. Woolf, to Caroline Burton, ancestor of the defendant Edward G. H. Burton. Prior to April 4, 1856, Thomas O. Woolf, Joseph A. Woolf, and John A. Woolf, plaintiff's ancestors, owned a tract of land in what is known as the borough of the Bronx, then part of the county

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Westchester, and which embraced the lands affected by this action. On February 4, 1854, they filed in the office of the clerk of Westchester county a map of said tract of land, entitled "Map of the Village of Mt. Eden, near Upper Morrisania Depot, in the Town of West Farms, County of Westchester, New York." On this map were laid out certain streets and avenues, and among others Walnut street and Eighth avenue. On April 4, 1856, by deed dated on that day, they conveyed to Caroline Burton, of whom the respondent is heir at law, lots numbered 17 and 18 on the aforesaid map, by the following description:

"All those two certain lots, pieces, or parcels of land situate, lying, and being in the town of West Farms aforesaid, and which are known and designated by the numbers (17) seventeen and (18) eighteen on a certain map entitled 'Map of the Village of Mt. Eden, near Upper Morrisania Depot, in the Town of West Farms and County of Westchester, N. Y.,' and which was filed in the office of the clerk of the county of Westchester February 14, 1854; said lot number (17) seventeen and (18) eighteen, taken together, being bounded and described as follows: Beginning at the northwesterly corner of Walnut street and Eighth avenue; thence running westerly along the said Walnut street 50 feet; thence northerly, parallel with Eighth avenue, 100 feet; thence westerly, parallel with Walnut street, 50 feet; thence northerly, parallel with Eighth avenue, 50 feet; thence easterly, parallel with Walnut street 100 feet, to said Eighth avenue; and thence southerly, along said avenue, 150 feet, to the corner aforesaid and place of beginning."

The land in controversy consists of one-half of Eighth avenue and Walnut street, as shown on said map of Mt. Eden, which lay in front of and abutted upon lot 17 conveyed by the foregoing deed, and the question upon which this appeal turns is whether or not, by the deed to Caroline Burton, the grantors conveyed to her or reserved to themselves the title in fee to one-half of the street and avenue shown on the Mt. Eden map as lying adjacent to and bounding said lot No. 17. The question has become important, because the city authorities, in pursuance of law, have permanently closed said street and avenue, so that they are no longer subject to any easements of use for street purposes. The question as to whether the description of a particular lot, in a conveyance thereof, which refers to abutting streets, should be construed as including or excluding the half of said abutting streets, has been frequently considered and discussed. The rule to be applied has recently been restated by the Court of Appeals as follows:

"The general rule, both in England and in this state, is that the fee of the soil of the highway is presumed to belong to the adjoining owners, and that a person holding land bounded on a highway between two estates is prima facie the owner to the center of such highway, subject to the easement of the public to the right of way, but that such presumption can be rebutted by an express provision in the deed to the effect that the fee to the highway was not intended to be conveyed, or by the use of such words as necessarily exclude the highway from the description of the premises conveyed, as where the description is bounded upon the exterior line of the highway, or commences at a point on one side thereof and thence runs along the side to a point specified; but where the premises are bounded by or run along a highway, without restricting or controlling words, the instrument must be construed as conveying the grantor's title to the center of the highway." Van Winkle v. Van Winkle, 184 N. Y. 193–203, 77 N. E. 33.

Turning to the description in controversy in the present case, we find that the lots, in the first place, are described by lot numbers with

reference to the Mt. Eden map, on which lot 17 appears as bounded by Eighth avenue and Walnut street. But for this reference to the map, it would be impossible to locate the lots at all. It is well settled that in a description which thus identifies the property sold as lots shown upon a map, on which also appears abutting streets, the conveyance will be presumed to include the abutting streets to the center line thereof, whether or not, at the time of the conveyance, the streets have been actually opened. Bissell v. N. Y. C. & H. R. R. R. Co., 23 N. Y. 61; Potter v. Boyce, 73 App. Div. 386–389, 77 N. Y. Supp. 24, affirmed 176 N. Y. 551, 68 N. E. 1123; Matter of Ladue, 118 N. Y. 219, 23 N. E. 465. Unless, therefore, the succeeding words in the conveyance in question serve to limit the effect of the reference to the Mt. Eden map, the deed to Caroline Burton included and comprised the title in fee to one-half of the street and avenue abutting upon and lying in front of lot No. 17. The particular description of the lots conveyed (still referring to the Mt. Eden map) states the point of beginning as "the northwesterly corner of Walnut street and Eighth avenue," and then carries the boundary line "along the said Walnut street," and later "along" Eighth avenue. The precise situation was considered in Trowbridge v. Ehrich, 191 N. Y. 361, 84 N. E. 297. In that case the deed under consideration had placed the starting point of the description at "the intersection of the northerly line of 163d street, with the easterly line of Stebbins avenue." The court held that this fixed the starting point at the external line of the street, but said:

"Had she [the grantor] commenced at the intersection of the two streets, and thence ran along the street, it would have been apparent that she intended to convey to the center of the street."

The appellant has cited a number of cases to us in which a description has been construed as excluding any part of the abutting streets. All of them are readily distinguished from the case at bar, because in each the description contained appropriate words to indicate an intention to exclude from the conveyance any part of the abutting streets. This feature is conspicuously absent from the deed we are now called upon to consider.

The judgment appealed from is therefore right, and must be affirmed, with costs. All concur.