(51 Misc. Rep. 274.)

### LEWISOHN v. LANSING CO. et al.

(Supreme Court, Special Term, New York County. July, 1906.)

**1. EASEMENTS—ABANDONMENT—EVIDENCE.**

An owner of land conveyed certain parcels which he described as running to the center line of a street which had not been laid out, one parcel on the north side thereof and the other on the south side. The grantees built a fence along such line, and they and their successors occupied up to it; neither recognizing the existence of any street. *Held* an abandonment of any right in the street, and a subsequent owner of part of the lands on the north side, whose title ran to the north line of the street, cannot, many years after such abandonment, enforce the easement in the street.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, §§ 77–79.]

**2. DEEDS—DESCRIPTION—BOUNDARIES.**

Where, after the abandonment of a street which had never been laid out or opened, conveyances of property on both sides of such street mention it, and the lots are bounded on the center line thereof and the north line thereof, the description by streets is only for the purpose of bounda-

ries, and not a claim of the streets as such in which the parties have easements.

Action by Adolph Lewisohn against the Lansing Company and others. Complaint dismissed.

Philip S. Dean (David B. Ogden, of counsel), for plaintiff.
Smith & Martin (Edward B. Whitney, of counsel), for defendants.

DAVIS, J. The defendant Lansing Company is the owner of a triangular piece of land adjoining plaintiff's land on the southwest. It is comprised within what would be the bed of 157th street, between the Boulevard Lafayette and Eleventh avenue, if 157th street had been opened as a continuous street from its easterly to its westerly terminus. One Hundred and Fifty-Seventh street has been opened to the ·eastward and to the westward of this triangle, but the triangle itself has never been condemned. The defendant Lansing Company owns it in fee. In 1905 the Lansing Company surrounded its lot with a fence, erected a building thereon, and leased the premises to the rapid transit commissioners. The plaintiff owns the land immediately adjoining these premises on the north, and claims an easement of light, air, and access in defendant's land. He brings this action to restrain the maintenance of the fence and building erected by the defendant, on the ground that they interfere with his enjoyment of the easement. The plaintiff bases his claim of perpetual easement upon the fact that defendant's premises were shown as part of 157th street upon a map made by the owner of the adjoining property, who sold to the plaintiff's and defendant's predecessors in title by reference to that map. The defendant Lansing Company claims title to the premises in fee free from any easement. The premises of the plaintiff and those of the defendant Lansing Company were owned formerly by Samuel Watkins. They formed part of a large tract conveyed to Watkins by James Beekman and others in 1815. By a deed dated August 16, 1843, James Watkins and his wife conveyed to Victor G. Audubon three pieces of land forming part of such tract, the second piece being bounded and described as beginning at the center of Eleventh avenue and 156th street; thence along the center of Eleventh avenue north 33 degrees 30 minutes east, 259 feet 10 inches, to the center of 157th street; thence along the center of 157th street north 56 degrees 30 minutes west, 845 feet 6 inches, to lands of Mrs. Lucy Audubon; thence along lands of Mrs. Lucy Audubon south 39 degrees 28 minutes east, 884 feet 6 inches, to the place of beginning, containing 2 acres, 2 roods, and 3½ perches. At this time (1843) that part of the city was entirely wild and uninhabited. One Hundred and Fifty-Fifth street had not been laid out, Trinty Cemetery did not exist, Eleventh avenue stopped far south of 155th street as it now exists, and to the north there were no streets in either direction between Tenth avenue and the Hudson river. Up to this time no map seems to have been made of this part of the city, no map is referred to in this deed, and the evidence does not indicate where 155th street or 157th street or Eleventh avenue was situated at this time.

By a deed dated November 15, 1843, Watkins and his wife conveyed to Matthew Morgan a large piece of this land, designated and distinguished on a map annexed to the deed by the numbers 2, 3, 4, 5, 7, 9, 10, 11, and 12. On this map are outlined Kingsbridge road, Tenth, Eleventh, and Twelfth avenues, and also 156th, 157th, 158th, 159th, and 160th streets, showing the property laid out in blocks, bounded by the several avenues and streets referred to. The plaintiff's property was comprised within lot No. 10, which lot is described in said deed as colored red, and, as shown on this map, is bounded on the north by the center line of 158th street, on the east by the westerly line of Tenth avenue, on the south by the center line of 157th street, and on the west by the Hudson river. Morgan thus owned the tract north of the center line of 157th street, and Victor Audubon owned the tract to the south of the center line of 157th street; this center line being the dividing line between the two premises. The tract north of the center line of 157th street came into the possession of Harris in 1850. This tract included the premises now owned by the plaintiff. This deed makes reference to a map showing streets and avenues. Shortly after Harris became possessed of this tract he agreed to sell John Dalley, his son-in-law, a portion of this property. Dalley erected a house thereon, and moved into it in the spring of 1852. He did not receive his deed until 1853, in which year, by a deed dated December 9th, Dennis Harris and his wife conveyed to Dalley:

"All that certain piece of land, situate in the Twelfth Ward of the city of New York, bounded as follows: Beginning at a point at the corner formed by the intersection of the southerly side of One Hundred and Fifty-Eighth street with the westerly side of the Eleventh avenue; thence running southerly, along the westerly side of Eleventh avenue, two hundred feet; thence westerly, along the northerly side of One Hundred and Fifty-Seventh street, one hundred and twenty-five feet; thence northerly, and parallel to the westerly line of Eleventh avenue, two hundred feet to the southerly side of One Hundred and Fifty-Eighth street; thence easterly, along the southerly side of One Hundred and Fifty-Eighth street, one hundred and twenty-five feet to the point of beginning. Together with the right, title and interest of the parties of the first part of, in and to the one-half part of the Eleventh avenue lying immediately in front of the land just described."

It will be observed that by this deed Harris did not convey the northerly half of 157th street. At the time Dalley bought this tract there was a fence running north and south through the then center of Eleventh avenue and a fence running east and west through the center of 157th street. This latter fence was there before Dalley became the owner, and was there during the period of Morgan's ownership, being the dividing line between the Morgan and the Audubon property. Dalley's house was built on the 158th-street side, which street was cut through about 1851. Dalley also had a barn within about two feet north of the fence in the center line of 157th street, and the rest of the lot was used as a vegetable garden and afterward as a lawn. These fences remained in about the same position until about 1873. During the time of Dalley's occupancy of the tract north of 157th street the tract south of the center line of 157th street was occupied and used up to the fence. This fence, during all this time, seems to have been the boundary line between the northern and south-

ern tract. Dennis Harris died in 1868. His widow, to whom the property was devised, conveyed to George B. Grinnell, by deed dated November 13, 1868:

"All that certain lot, piece or parcel of land, situate, lying and being in the Twelfth Ward of the city of New York, and bounded and described as follows: Beginning at a point on the northerly side of One Hundred and Fifty-Seventh street, distant easterly 100 feet from the easterly side of the Twelfth avenue; and running thence southerly, and parallel to the Twelfth avenue, 30 feet to the center line of One Hundred and Fifty-Seventh street; thence easterly, and along said center line, 750 feet to the center line of the Eleventh avenue as originally laid out, 100 feet in width; thence northerly, along said center line of the Eleventh avenue, 30 feet; and thence westerly, and along said northerly side of One Hundred and Fifty-Seventh street, 750 feet to the point or place of beginning."

These premises included the northerly part of the triangle now owned by the defendant the Lansing Company. Grinnell died in 1891. By a deed dated December 6, 1899, given in a partition suit brought by the devisees of George B. Grinnell, the Lansing Investment Company took title to the property by the following description:

"All the interest which George Blake Grinnell had on January 1, 1891, in the piece of land bounded on the east by the westerly side of Broadway (formerly called the Boulevard or Eleventh avenue), on the west by the easterly side of the Boulevard Lafayette and on the north by a line formed by producing westerly the northerly side of One Hundred and Fifty-Seventh street beyond where it ends on the easterly side of Broadway."

By deed dated December 6, 1899, the executors of George B. Grinnell conveyed to the Lansing Investment Company the same tract by the following description:

"All that piece of land bounded on the east by the westerly side of Broadway (formerly called the Boulevard or Eleventh avenue), on the west by the easterly side of the Boulevard Lafayette and on the north by a line formed by producing westerly the northerly side of One Hundred and Fifty-Seventh street beyond where it ends on the easterly side of Broadway."

The name of the Lansing Investment Company was duly changed in 1904 to the Lansing Company. Thus in 1899 this company became the owner of the northerly part of 157th street, between what is now Broadway and the Boulevard Lafayette, and adjoining plaintiff's tract of land. The piece south of the center line of 157th street which had been conveyed by Watkins to Victor G. Audubon came into the possession of the defendant Lansing Company in the following manner: By deed dated September 27, 1850, Victor G. Audubon conveyed to Lucy Audubon the same property conveyed by Watkins by the same description as contained in the Watkins deed, and by deed dated November 5, 1851, Lucy Audubon conveyed to Victor G. Audubon a large tract, which included that part of the Lansing Company's triangle south of the center line of 157th street. Victor G. Audubon died on August 27, 1860, seised of the property so conveyed to him by Lucy Audubon, and by deed dated August 2, 1864, his executrix conveyed to Helen L. Grinnell a tract which included the southerly part of this triangle. A quitclaim deed of said property was also given by the wife of Victor G. Audubon, dated September 21, 1864. Helen Grinnell died seised of this property April 23, 1894. Her heirs, devisees, and

executors, by deeds dated June 19, 1899, December 5, 1899, and December 6, 1899, respectively, conveyed to the defendant Lansing Investment Company the triangular piece of property in question by practically the same description, and by the same description the referee in the partition suit conveyed the same property to the Lansing Investment Company by deed dated December 6, 1899. The Lansing Company thus became seised of the bed of 157th street, between the center and southerly lines, which, with the other conveyances, gave it title to the whole bed of 157th street adjoining Dalley's premises. By deed dated March 20, 1860, John Dalley conveyed to Jacob Northam, by the same description, the tract conveyed to him by Harris, and by practically the same description Northam and his wife conveyed it to John Dalley by deed dated June 24, 1872. Then, through various mesne conveyances, the plaintiff became possessed of the tract of land north of 157th street, bordering on the northerly line of 157th street. I think neither the deed from Watkins to Audubon nor that of Watkins to Morgan created any easement in 157th street. These deeds were made in 1843. The Morgan deed made reference to a map showing 157th street. The Audubon deed referred to no map. Both deeds conveyed the fee to the center of 157th street. The center line was the dividing line between the two premises, and, soon after the making of the Audubon deed, a board fence was built along this center line. The land to the north and south of this fence was treated as the sole property of Morgan and Audubon, respectively, and there is nothing to show that either ever claimed an easement in the land of the other. In view of the fact that at the time of these conveyances this property was unimproved and uninhabited; that it was conveyed in large tracts, with no express reservation of easement, and that the fee of the street was conveyed, we are forced to the conclusion that no easement was intended to be created by these conveyances in 1843. Matter of West 214th St., 109 App. Div. 575, 96 N. Y. Supp. 557. The same may be said as to the effect of the deed from Morgan to Harris in December, 1850.

We next come to the deed from Harris to Dalley in 1853. By this deed Harris conveyed to Dalley the fee, using as a southerly boundary the northerly side of 157th street. Although he got no fee in this street, Dalley inclosed it and used it as his private property, but never as a roadway. One Hundred and Fifty-Eighth street was then in use, and 157th street was not necessary to the beneficial use of Dalley's property. Moreover, it seems clear that Dalley's own claim and conduct with reference to 157th street indicate that there was no intention to create an easement in 157th street, or, if there was such an easement, that it was abandoned by Dalley. Concerning this it appears that some time prior to June 3, 1873, proceedings were commenced on behalf of the city of New York to acquire title to certain lands, including a part of 157th street, near Dalley's premises, for the purpose of laying out a public drive. The report of the commissioners appointed in this proceeding was confirmed June 3, 1873. The report, among other things, awarded to "unknown owners" the sum of $1,547 for the land taken. After the confirmation of the report

George B. Grinnell, claiming to be the owner of the land taken and for which this award was made, asserted his ownership under a deed from the widow and devisees of Dennis Harris, dated December 13, 1868, which deed conveyed to him the property taken in the bed of 157th street, north of its center line and in front of Dalley's property, and made application for the payment to him of such award. On Grinnell's application a referee was appointed to hear and examine into the matter of the title to the land and the award made therefor. In the proceedings before the referee Grinnell, Dalley, and the city appeared. Grinnell claimed the land under the title heretofore specified, and Dalley asserted title thereto by adverse possession, claiming that he had had adverse possession of this tract since 1852 down to the time of the proceedings referred to. This tract of land was known as No. 10, and the tract which Dalley owned and which was bounded by the northerly side of 157th street was known as lot No. 11. Thus in 1873 Dalley claimed that he had owned in fee by adverse possession what plaintiff now claims is the northerly part of 157th street, and in which he claims that he has an easement of light, air, and access.

Furthermore, when Dalley conveyed his property (lot No. 11) to Northam in March, 1860, he was still in possession of lot No. 10, as he was in 1873, and when in June, 1872, Northam reconveyed lot No. 11 to Dalley, he then again became possessed of both lots. Thus in 1873, in the condemnation proceedings, while still occupying lots Nos. 11 and 10, he claimed that he owned lot No. 10 by adverse possession. He claimed no easement by virtue of his ownership of lot No. 11. This claim of ownership in the bed of the street was consistent with the conditions of the property, and the intentions evidenced by the owners of the northerly and southerly tracts since the deeds from Watkins up to 1873. They treated the description by streets simply as boundaries, and not as streets in which each had easements. Undoubtedly an easement may be abandoned. "The question of abandonment is one of intention, depending upon the facts of the particular case. But time is not a necessary element in a question of abandonment. A cesser to use, accompanied by an act clearly indicating an intention to abandon the right, would have the same effect as a release, without reference to time. * * * The cesser to use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as a release, without any reference to the time during which such cesser has continued." Snell v. Levitt, 110 N. Y. 595, 604, 18 N. E. 370, 1 L. R. A. 414, quoting from Washburn. It seems to me that the intention of Watkins, Harris, and the Audubons was simply to describe 157th street as a boundary, and Dalley's conduct is beyond question indicative of that also; he having claimed in 1873 that he owned lot No. 10 by adverse possession. Moreover, I think he was estopped thereafter from claiming an easement (the Court of Appeals in the condemnation proceedings having decided that Grinnell owned lot No. 10). The facts in the case of White's Bank of Buffalo v. Nichols, 64 N. Y. 65, 75, are quite different from the facts in the case at bar. There the court, at page 75, say:

"The inclosure was the result of a mistake as to the limits of his grant, rather than evidence of an intent to abandon the right to a street upon the westerly line and adjoining his lot as the boundary should be finally determined."

Here there was no misunderstanding as to the boundaries of lot No. 11. Dalley abandoned his easement, if any he had, by asserting his claim to a fee in this portion of the street. The claim of fee is inconsistent with a claim of easement. Grinnell had title to the southerly part of the street by adverse possession and Dalley clearly had no right of easement therein. Weighing the facts of this case in the light of the reasoning in Matter of West 214th St., 109 App. Div. 575, 96 N. Y. Supp. 557, I conclude that the plaintiff has no easement in the defendant's (Lansing Company) property.

Complaint is dismissed, with costs.