ASA A. WESTCOTT *vs.* NEW YORK AND NEW ENGLAND
RAILROAD COMPANY.

Worcester.    September 29, 1890. — November 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Railroad Location — Abandonment — Evidence.*

Upon the issue of the abandonment by a railroad corporation of a strip of land
half a rod wide on one edge of its location, there was evidence that, shortly after
the road was located five rods wide, the directors passed a vote looking to the
narrowing of the location in certain places, and providing how it should be done;
that subsequently the damages caused by the railroad to the parcel of which
the strip formed a part were awarded, with the corporation's consent, and the
same paid, and a release given, on the basis of a location four rods wide; and
that for thirty years thereafter the corporation maintained a fence which
excluded the strip and marked the location as apparently four rods in width.
*Held*, that the evidence was sufficient to go to the jury, and to warrant a finding
of abandonment.

An abandonment of a right of way is usually and properly shown by acts which
do not appear of record; and it need not appear of record in order to be
effectual.

At the trial of an action against a railroad corporation, its agreement with the
owners of land taken by it respecting damages was in evidence, and their signa-
tures were admitted to be genuine   A release to the corporation of such land,
purporting to be made on the same date as the agreement, and to be signed by
the same owners, and, for the most part, by the same witnesses, and to be
acknowledged on the same day before the same magistrate, was offered in
evidence for the purpose of showing that the corporation, if the agreement was
carried out, was to take a deed of a strip but four rods wide, which fact was
conceded in the course of the trial. *Held*, that the release was sufficiently
identified to go to the jury, and if not, an objection to its admission became
immaterial.

A deed to trustees in temporary possession of a railroad of a strip of land included
in its original location, which recited their opinion that increase of business
required its purchase, is admissible, on the issue of its abandonment by the rail-
road, as tending to show that the grantees did not then claim to have a right
to use it, although the conveyance was subject to a prior mortgage whose
foreclosure rendered the grant ineffectual.

TORT, in the nature of trespass, for entering, on or about June
22, 1888, a strip of land eight and a quarter feet wide westerly
of the defendant's railroad, and for removing an intervening
fence and appropriating the strip for railroad purposes.    At
the trial in the Superior Court, before *Dewey*, J., both the

plaintiff and the defendant excepted to certain rulings; and the judge, after a verdict for the plaintiff, reported the case for the determination of this court. The facts, so far as material to the points decided, appear in the opinion.

*F. P. Goulding*, for the defendant.

*G. J. Tufts*, for the plaintiff.

C. ALLEN, J. The court ruled in the defendant's favor, that the location of the railroad on April 27, 1854, which was five rods wide, was valid, and that the defendant had a valid right of way over the premises now in controversy, consisting of a strip of land half a rod wide on the outer line of the location on one side thereof, unless the jury should be satisfied that it had been abandoned. That there might be an abandonment of the right of way is conceded. The defendant contended, however, that there was no evidence to warrant a finding of such abandonment; and this presents the principal question which we have to determine. We have not to consider whether the evidence reported would be deemed sufficient by us sitting in the place of a jury. A motion to set aside the verdict, on the ground that it was against the weight of the evidence, was made and waived in the Superior Court. The question for us is, whether there was evidence sufficient to entitle the plaintiff to go to the jury, and we cannot doubt that there was.

The most significant facts were as follows. On October 30, 1854, the board of directors of the railroad company then owning the railroad passed a vote reciting that there were certain instances in which it was for the mutual interest of the company and of the owners of land upon the line of the railroad that the location should be varied so as not to take the five rods in width allowed by law, and providing how such variations might be made. This showed an intention on their part to reduce the width of the location in some places. On May 24, 1856, a petition was filed before the county commissioners by the administrator of William L. Carlton, who had owned the land of which the premises now in controversy constitute a part, setting forth that the railroad company maintained a railroad across the land, taking therefor a strip of land four rods in width or thereabouts, and praying for an assessment of damages. On March 5, 1857, the board of directors passed a vote, reciting that

articles of agreement had been prepared, accepted, and were ready for execution, between the representatives of the Carlton estate and the railroad company, touching, amongst other things, a release of the Carlton lot, so called, which was a part of said Carlton estate, and the payment of the company therefor, and the amount of damages due from the company to the Carlton estate from the railroad company to be awarded by the county commissioners; and providing for the manner of executing and carrying out the said articles of agreement. On March 9, 1857, the county commissioners passed an order, reciting the above petition for damages for a strip of land four rods in width or thereabouts, and the subsequent proceedings thereon, the appearance of the railroad company, the taking of a view of the premises, and the hearing, and awarding damages in the sum of $15,171.77, with costs; the amount of damages having been fixed by the assent of the parties. On the same day, March 9, 1857, the articles of agreement were executed by the persons representing the Carlton estate and by the railroad company, reciting that a deed of release of the Carlton lot had been deposited in escrow to be delivered to the railroad company upon payment, within a specified time, of the sum awarded by the county commissioners; and a deed of release was produced, appearing to be signed by those representing the Carlton estate, describing the land released as a piece four rods wide where the railroad passed through the estate. There was oral evidence tending to show that in 1857 or 1858 the railroad company built a fence upon a line which would give them four rods in width, and which excluded the premises in controversy, and that it maintained the same there until 1888, during which time those representing the Carlton estate, and their successors in title, were left in undisturbed possession of the strip eight and a quarter feet wide which was outside of the fence, and which had been included in the original location of five rods in width. On August 4, 1873, one Pinkham and others executed to Hart and Clark, who were then in possession of the railroad as trustees under the Berdell mortgage, so called, a deed of a part of this strip of eight and one fourth feet in width.

The counsel for the defendant has addressed a powerful argument to us, to impair the force of each one of these facts, and

has called attention to other facts and circumstances which certainly would deserve attention from any tribunal having to pass upon the facts; but all that we need to say is, that all the facts were proper to be submitted to the jury, who were the proper tribunal to judge of their weight, and of the effect of the explanations and arguments on the one side and the other. Taking them all together, they were sufficient in law to warrant a finding of an abandonment of the strip of land outside of the four rods. *Hayford* v. *Spokesfield*, 100 Mass. 491, 494. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 104 Mass. 1, 7. *Warshauer* v. *Randall*, 109 Mass. 586. *Barnes* v. *Lloyd*, 112 Mass. 224. *Chandler* v. *Jamaica Pond Aqueduct*, 125 Mass. 544, 549. *King* v. *Murphy*, 140 Mass. 254. *Eddy* v. *Chace*, 140 Mass. 471, 472.

The defendant further contends that it is not bound by any abandonment by the Boston and New York Central Railroad, (one of its predecessors in title,) unless such abandonment is shown by acts which appear of record. But an abandonment of a right of way is usually and properly shown by acts which do not appear of record, and it need not appear of record in order to be effectual.

The defendant further contends, that the deed of release, purporting to be signed by those representing the Carlton estate, was not sufficiently identified or proved, and that the judge erred in allowing the same to go to the jury. This deed purported to be signed by nine persons, all of whom were parties to the agreement. The dates of the agreement and of the deed were the same, the witnesses to the signatures were mostly the same, and the acknowledgments of both were made on the same day and before the same magistrate. It was admitted that the signatures on the agreement were genuine. The papers were all before the judge, who could compare the signatures upon the deed with those admitted to be genuine, and it was a matter for him to determine whether it appeared to be a genuine paper, so that it could properly be laid before the jury. His determination should not be reversed unless plainly wrong. In the present case, the admission of the deed, so far as we can judge without seeing the original papers, was right. *Doe* v. *Keeling*, 11 Q. B. 884. 1 Greenl. Ev. §§ 141–144.

Moreover, the objection to the admission of this deed seems to have become wholly immaterial, by reason of what took place afterwards. The sole object of putting it in evidence was to show that the railroad company, if the agreement was carried out, was to take a deed of a strip of land only four rods in width. But the report of the case shows that it was agreed that this release covered a strip only four rods in width. Even if the identity of the release was not sufficiently proved, it was received in evidence only to prove a point which in the course of the trial was conceded, and under such circumstances no new trial should be granted, even if the proof of the deed had been insufficient.

The only other objection now insisted on by the defendant is that the deed from Pinkham and others was wrongly admitted, because the title which it conveyed had been subject to a prior mortgage which had been foreclosed, so that the grant thereby became ineffectual. But the significance of this deed was, that Hart and Clark, who were then in possession of the railroad as trustees under the Berdell mortgage, so called, were therein recited to be of opinion that the business of the road required the increase and improvement thereof by the purchase of the land therein described; which land was outside of the width of four rods. This evidence was competent as tending to show that they did not at that time claim to have a right to use the land described, subject of course to explanation and comment. The fact that they did not finally hold the land, by reason of the foreclosure of the prior mortgage, does not destroy the effect of their act in taking the deed.

Since the defendant's exceptions will not avail to set aside the verdict, the plaintiff does not insist on his exceptions, and they need not be considered.

*Judgment on the verdict.*