ANNIE D. SMITH *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Suffolk.    March 19, 1895. — June 3, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Trespass quare Clausum — Abandonment — Evidence — Res inter alios — Plan.*

On the issue of the abandonment of part of a railroad location originally five rods wide, evidence was offered that the owner of land adjoining the locus filed a petition to the county commissioners for the assessment of damages for land taken from him, in which it was alleged that the railroad had taken a strip "four rods in width or thereabouts"; that damages were awarded, which, by agreement of the parties, were to be paid within a time limited, whereupon the railroad company was to receive a deed of land extending more than two and a half rods on the other side from the centre line of the road and up to the locus; and that the deed was delivered in escrow. The damages were not paid by the company as agreed, nor was the deed delivered to it. *Held*, that the evidence was inadmissible.

On the issue of abandonment of part of a location originally five rods wide, a deed to the railroad company of land eight hundred feet away from the locus, tending to show that the road there was only four rods wide, is inadmissible.

On the same issue, a lithographic plan of house lots, referred to in such deed for the lot conveyed, purporting to show the railroad for a considerable distance including the locus, but not purporting to be drawn to scale, is inadmissible.

TORT, for breaking and entering the plaintiff's close and erecting a fence thereon. Writ dated April 1, 1891. Trial in the Superior Court without a jury, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

The premises in controversy are situated on the east side of the defendant's railroad near the Harvard Street station in the city of Boston, and consist of a strip of land lying between two

lines, one of which is two rods and the other two and a half rods easterly of the centre line of the location of the railroad. The original location of the road at this point, filed April 27, 1854, by the Boston and New York Central Railroad Company, the defendant's predecessor, was five rods wide, and included the strip in question, which, it is contended by the plaintiff, was subsequently abandoned. Prior to the filing of such location by the railroad company, this strip was comprised in a farm of about twenty acres owned by one Tolman, who on April 3, 1854, sold a portion of it containing about four acres, known as the Tolman lot, to one William L. Carlton. It was contended by the plaintiff that the easterly boundary of the land so sold coincided with the extended westerly line of the strips in question two rods east of the centre line of the defendant's railroad as subsequently located. At the time of the sale there was no fence or natural boundary on the division line between the lots, but it appeared that one was built there two or three years later and maintained until 1888. At the time of the location of the railroad Carlton was the owner of the next two adjoining lots of land north of the lot purchased by him from Tolman, through which the location ran. These were known respectively as the Carlton and Pierce lots.

Two years after the location was filed, Carlton having deceased, his administrator filed a petition to the county commissioners asking for an assessment of the damages for the taking of his land, in which he alleged that the land taken " for the building of said railroad and for railroad purposes " from each of the lots owned by him was a strip " four rods in width or thereabouts." Upon this petition, by consent of the parties thereto, the county commissioners, on March 9, 1857, awarded damages in the sum of $15,171.77, and described the land taken as it was described in the petition.

The record of these proceedings was admitted, subject to the exception of the defendant, and an agreement, and a deed referred to in it bearing the same date as the decree of the county commissioners, were also admitted, subject to the exception of the defendant, by which it appeared that the railroad company was to pay to the administrator the damages awarded, with interest, within three years from that date, and was to receive deeds

signed by the heirs of Carlton which together covered the strip four rods wide through all of these lots, one deed being made for each lot, and these deeds were delivered in escrow, with the provision that any deed might be taken by the company on payment of that portion of the money which was mentioned as the price of the land conveyed by it. It was further stipulated that, if the whole amount was not paid, with interest, within three years, the deeds should be returned to the grantors, and the railroad company should have no right to the land except that derived from its location, and should be liable for the payment of the commissioners' award. The sum mentioned in the agreement was not paid within the time limited therein, and the deeds of the lots which had been delivered in escrow were never delivered to the railroad company. The descriptions in the deeds of the Carlton and Pierce lots delivered in escrow covered a strip four rods in width only, while the description in the deed of the Tolman lot covered nearly all the land sold by Tolman to Carlton. The agreement between the railroad company and the heirs of Carlton did not include the half-rod strip which is now in controversy.

The plaintiff also offered in evidence a deed dated August 4, 1873, from one Pinkham to William T. Hart and Charles P. Clark, who, as trustees, were in possession of the property of the Boston, Hartford, and Erie Railroad Company, a successor in title of the Boston and New York Central Railroad Company. By this deed, as the plaintiff contended, land was conveyed to within two rods of the centre line of the defendant's location where its Harvard Street station now stands. Of the land so conveyed the point nearest to the strip now in controversy was distant eight hundred feet therefrom, and on the opposite side of the track. This deed, which was admitted subject to the exception of the defendant, referred to an extended lithographic plan of land belonging to the Mt. Bowdoin Land Associates, in which, on the outskirts of the land, was laid down, for a considerable distance, the track of the Boston, Hartford, and Erie Railroad, the defendant's predecessor. The plan contained no scale, and a witness who testified that the original was made in his office also testified that the scale of the plan referred to, which was a reduced lithographic scale, would appear

different by measurement; but he stated that he was very familiar with the plan, and that the width of the road, as shown, was about four rods at different places, including the place in question.

The judge found for the plaintiff; and the defendant alleged exceptions.

*F. A. Farnham*, for the defendant.

*E. O. Achorn*, for the plaintiff.

HOLMES, J.   This is an action of tort, in which the question is whether a strip of land half a rod wide on the east side of the defendant's road-bed belongs to the plaintiff or to the defendant. The land is to the south of the lands in controversy in *Bicknell* v. *New York & New England Railroad*, 161 Mass. 428, and in *Westcott* v. *New York & New England Railroad*, 152 Mass. 465, and is on the east side of the road-bed.   In this case, as in those, it is to be taken that the original location was five rods wide, and included the strip in question, and the only issue is whether it had been narrowed by abandonment of this strip. The principal exception is to the admission of the documents mentioned in the cases named.   These documents are a petition to the county commissioners by the administrator of one William L. Carlton, for the assessment of damages for land taken by the location, the decision of the county commissioners thereon by consent of the parties, and a deed executed in escrow by the widow and heirs of Carlton as part of the same transaction, together with the agreement as to the terms and conditions for its delivery.

The documents were held to be admissible in the former cases, but the present case is materially different.   The land now in controversy did not belong to Carlton, but lay just outside his line, which only extended to what has been called the four-rod line, on the east side of the location.   Of course, therefore, the proceedings on behalf of his estate could not affect or deal with this strip.   They did not purport to do so in any way, or contain any language about it.   If the escrow had been delivered, which it was not, it would have afforded no argument from probabilities that the location extended only two rods to the east of the centre line, on the ground that it was only two rods on the west.   On the contrary, the escrow would have conveyed at this

place the whole of the Tolman lot, so called, belonging to Carlton, which was much more than two rods and a half on the west of the centre line. No argument in favor of abandonment can be drawn from the fact that the road was only four rods wide further to the north; for the location was five rods, and the greater part of the road unquestionably is five rods wide. This escrow contained no language like that in the Bicknell case, importing that a tract only four rods wide was the whole road-bed of the defendant at that point. The only expression which could be laid hold of as possibly affecting the defendant's right is a general allegation in the petition to the county commissioners that the railroad had taken from the parcels belonging to Carlton " a strip of land four rods in width or thereabouts." If this allegation were more specific than it is, it still would leave untouched the question what land the railroad had taken not belonging to Carlton. We are of opinion that in this case the documents should have been excluded.

The other exception relates to the admission of a deed of land eight hundred feet distant from the strip in question, and a plan referred to in the deed. In the Westcott case the deed was admitted, as it conveyed a part of the land then in controversy. But, for the reason already given, the fact, if it be one, that the railroad did not claim other land outside the four-rod line, does not tend to prove that it did not claim this. The deed was not admissible as a conveyance. It was argued that the plan referred to was admissible on independent grounds. It is an extended lithographic plan of land belonging to the Mt. Bowdoin Land Associates, and on the outskirts of the land is laid down the track of the defendant's predecessor, the Boston, Hartford, and Erie Railroad, for a very considerable distance. A witness who testified that the original was made in his office testified also that the scale of the plan referred to was a reduced lithographic scale, and that the scale would appear different by measurement, but stated that he was very familiar with the plan and that the width of the road as shown was about four rods at different places, including the place in question. The width to the eye is the same throughout. The plan does not purport to be drawn to scale. It seems to us quite impossible to say that the railroad, by accepting a deed referring to a different part of

the plan, admits or may be argued to have admitted that the width attributed to its road is correct throughout its whole length, without having any intimation on the face of the paper what that width is supposed to be, and the purpose of the reference to it having no bearing on the matter, except in one small and distant spot.    *Exceptions sustained.*