## THE NEW YORK, NEW HAVEN AND HARTFORD RAIL-ROAD COMPANY *vs.* LOUIS CELLA.

Second Judicial District, Norwich, April Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

As one of the exceptions to the rule rejecting hearsay evidence, ancient documents—that is, documents at least thirty years old—and the recitals contained therein, are admissible to establish ancient ownership and possession of land, which, in many cases, could not otherwise be proved.

While nonuser and lapse of time are not enough to constitute abandonment, they are nevertheless competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances.

The evidence in the present case reviewed and *held* to warrant a finding by the trial court that the plaintiff railroad company had abandoned the land in question, which lay within its right of way as established by condemnation proceedings in 1833.

A letter to the plaintiff railroad company offering to sell it the property in question, and the answer of the company thereto, were admitted in evidence. *Held* that for the purpose of proving notice to the company of the alleged ownership of the writer, this letter, in connection with its answer, were properly received.

An answer to a letter addressed to an agent of a corporation respecting a matter in which it is interested, will be presumed to have been made by one whose duty it was to act in that matter, until the contrary appears.

A claim that the loss of a letter had not been sufficiently shown to admit secondary evidence of its contents, is not available upon appeal unless the record discloses that such claim was made in the trial court; for had it been made there, further evidence of the loss would, or might, have been required.

In an action in the nature of ejectment, evidence of the time and money spent in good faith by the defendant in making improvements upon the *locus* in the belief that he was the absolute owner thereof, is admissible under a general denial of the averments upon which the defendant's claim for such improvements is based.

Argued April 28th—decided October 8th, 1914.

ACTION in the nature of ejectment, brought to and tried by the Superior Court in New London County,

*Curtis, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The land in controversy, with the buildings thereon, is situated in the village of Pawcatuck, in the town of Stonington, county of New London, and is bounded northerly by West Broad Street, easterly by Mechanic Street, and southerly and westerly by the railroad tracks and abutments of a bridge belonging to the plaintiff company.

The plaintiff alleged in its complaint that this land was a portion of its right of way which had been condemned for railroad purposes.

The defendant's answer, in addition to a general denial, contained two special defenses: first, that he and his predecessors in title had acquired title to the property by adverse user; second, that if any right of entry and possession ever belonged to the plaintiff, it had abandoned it. The defendant, pursuant to § 4052 of the General Statutes, also claimed to recover for improvements he had made in good faith upon the property before the commencement of this action, believing that he had an absolute title to the property.

The Superior Court found for the defendant upon the question of adverse user and abandonment.

The finding states that the New York and Stonington Railroad Company (the plaintiff's predecessor in title) in 1833 condemned for railroad purposes a strip of land six rods in width through property then belonging to Thomas Noyes in the town of Stonington; that in addition to the strip six rods in width, the railroad company also took from Thomas Noyes a strip of land two rods wide adjoining the six-rod strip on the east. This two-rod strip was taken in order to give an outlet to West Broad Street from the property of one S. Dickinson, lying southerly of the Noyes tract, which, without this driftway, so-called, would be isolated by the

railroad embankment. This driftway later became the westerly part of Mechanic Street, a public highway now paralleling the railroad embankment. This land was purchased by Thomas Noyes in 1800.

The condemnation proceedings were completed on November 11th, 1833, by the acceptance by Thomas Noyes of the amount of the award of the commissioners in the condemnation proceedings and the giving by him of a receipt.

At the time of the condemnation, a small blacksmith shop stood on a portion of the land of Noyes so condemned, at the northeasterly corner thereof fronting on West Broad street, and also on the driftway when it was laid out.

The distribution of the estate of Thomas Noyes, after reciting that his death occurred on the 17th day of March, 1844, stated that he "died intestate, seized and possessed of divers parcels and pieces of real estate." Of this real estate it appears from the distribution that there was set to Henry Noyes, son of the deceased, the following: one lot with a blacksmith shop standing thereon, bounded northerly and easterly by the highways and southerly and westerly by the railroad abutment. This same land was distributed in 1850 to Phebe N. Wells, a sister of Henry Noyes, then deceased, at an appraised valuation of $200.

In 1870 Phebe N. Wells, the distributee mentioned in the preceding paragraph, for the consideration of $800, conveyed this property to Giles H. Wilcox by warranty deed, which deed contained the usual covenants of warranty and seisin. The real estate so conveyed was described precisely as set forth in the preceding paragraph.

On October 1st, 1877, James E. Sisson, as administrator of the estate of Giles H. Wilcox, conveyed this same land to Margaret A. Dickens. On December 6th,

1879, Margaret A. Dickens conveyed it to the Mechanics Savings Bank. In November, 1889, the savings-bank quitclaimed its interest in this same property to James Carley for the consideration of $500. The same consideration appears in a deed for the property given by James Carley to Thomas Crowley in December, 1899. On April 10th, 1903, John H. Ryan, as administrator of the estate of Thomas Crowley, conveyed this same property to William H. Talmadge. The consideration expressed in this deed is $1,071. Talmadge conveyed to the defendant in August, 1907, by warranty deed. The same description of the land in controversy appears in all the distributions and conveyances referred to in the preceding paragraphs.

The blacksmith shop as used on this land was replaced by a store which was used until 1908, when it was torn down and a modern store building and dwelling was then erected thereon by the defendant, Cella.

The occupation of this part of the *locus in quo* after the same was condemned and taken as aforesaid, was under the claim of Thomas Noyes and his successors in title, who were the owners of the fee. The present location of the Cella building is substantially the same as the blacksmith shop as used by Giles H. Wilcox.

The plaintiff constructed a wing-wall, when the abutment was built on West Broad Street, which wing-wall was so constructed as to clearly exclude the *locus in quo* from the land of the plaintiff.

Cella was notified of the plaintiff's claim before he began to erect his building hereinbefore referred to.

The first abutments for a bridge were constructed for a single track road in 1835. These abutments were rebuilt in 1871, when they were changed from the original location. The land in controversy will be required for use by the railroad company if it shall four-track its road, as it contemplates doing.

"There was room and space sufficient between the blacksmith shop and the abutments and wing-wall for the railroad company to enter and make all repairs and do all construction which it became necessary at any time to do until the present building was erected up to and against the wing-wall."

Several plans and maps, used upon the trial of the case in the Superior Court, were made a part of the finding and were used upon the argument of the case before this court. Additional facts so far as necessary are stated in the opinion.

*Hadlai A. Hull* and *Frank L. McGuire*, for the appellant (plaintiff).

*Abel P. Tanner* and *Herbert W. Rathbun*, for the appellee (defendant).

RORABACK, J. The plaintiff excepts to certain facts found by the court. Among them are several which have an important bearing upon the plaintiff's case. It has been found that, after the condemnation of the Thomas Noyes land by the railroad company in 1833, he continued in possession of the small parcel of land with the shop upon it; that the present location of the Cella building is substantially the same location as the blacksmith shop; that the occupation of it after it was so condemned was under the claim of Thomas Noyes and his successors in title; and that the defendant and predecessors in title have used and enjoyed this property adversely since 1800.

It is urged that these facts are found without any evidence to support them. Under certain well-known principles of law this difficulty of making proof receives constant recognition by the court. The actor in any case will be required and, within the limits of sound

reasoning, permitted, to present to the court the best and fullest case that it is within his power to offer. In this respect the element of remoteness is an important one. It follows that where the fact in question comes to the tribunal from a time beyond living memory, placed at thirty years, there is an exception to the rule rejecting hearsay evidence, allowed in cases of ancient possession, and in favor of the admission of ancient documents in support of it. 2 Chamberlayne on Evidence, § 1195, and cases cited in notes 1 and 5, pages 1515 and 1516; 1 Greenleaf on Evidence (12th Ed.) p. 163. Ancient documents are admissible to prove ancient possession. They are evidence of acts of ownership and of facts tending to prove ownership, and, in many cases involving ancient possession, they are the only evidence that the nature of the case permits. *Merwin* v. *Morris*, 71 Conn. 555, 573, 575, 42 Atl. 855. In *Foote* v. *Brown*, 81 Conn. 218, 70 Atl. 699, where the ownership and possession of land was the subject of discussion, this court said (p. 225): "A mere paper chain of title in the plaintiff does not establish his ownership of the land, unless his possession or that of his grantors is shown. But evidence of actual possession is unnecessary if the jury is satisfied, by documentary or other evidence, of ownership by the plaintiff's predecessors in title, since title thus established draws with it possession in the absence of any evidence to the contrary." See also 1 Wharton on Evidence (3d Ed.) § 194; *Boston* v. *Richardson*, 105 Mass. 351, 371.

It is noticeable that most of the transfers of this property, by deed and by distribution, were made more than thirty years prior to the trial of the case in the Superior Court. This state of facts amply justified the admission of this class of evidence as ancient documents, and the recitals made therein are admissible against the plaintiff.

The fact to be established was one of possession. The trial court has fairly found that the town records of the town of Stonington showed clear title to the *locus in quo* in the defendant by an ancient line of conveyances commencing with the deed of Thomas Noyes in 1800. In this connection it is of importance to notice that the distribution of his real estate, made in 1844, recited that he died "seized and possessed" of this identical property. These conveyances defined the defendant's interest in the property; they were admissible to prove possession. They were evidence of acts of ownership and of facts to prove such ownership.

It appears that during all these years this property had a substantial market value. In 1850 the distributors of Henry Noyes' estate appraised the property at $200. Twenty years later Phebe N. Wells, the distributee of the estate of Henry Noyes, by warranty deed conveyed this parcel of land, with a blacksmith shop standing thereon, for a consideration, as expressed in the deed, of $800. None of these conveyances recognized any title in the property in the railroad company or companies. The user was open and of such a character as to give notice of the extent of it to the plaintiff company and others engaged in the operation and maintenance of the railroad. It was under claim of right, manifested by the deeds, recitals therein, and the records thereof. *Parker* v. *Hotchkiss*, 25 Conn. 321; *Water Commissioners* v. *Perry*, 69 Conn. 461, 468, 37 Atl. 1059; *Williams* v. *Wadsworth*, 51 Conn. 277.

An examination of the land and probate records would have shown a clear title to the property in the predecessors in title of Cella. The railroad company's map of its layout, in the Secretary of State's office in Hartford, would not have furnished any satisfactory information as to the railroad company's right to this

strip of land, as this exhibit was merely a map with a center line determined by courses.

At least three witnesses testified that the location of the defendant's business block is upon the same ground as that of the old blacksmith shop. These witnesses also described the changes which had taken place in the structures upon this land in later years.

The reasons of appeal are numerous. There are several which involve the action of the trial court in finding that the plaintiff and its predecessors in title abandoned the *locus in quo*. This case was before us at the October term, 1912, when the judgment rendered upon a former trial was set aside. See 86 Conn. 275, 85 Atl. 521. In the opinion after it was written at that time the word "not," in the twelfth line from the bottom of page 279, was inadvertently omitted. The opinion when it was written read, as it should now read, that "mere nonuser and lapse of time, unaccompanied by any other evidence showing an intention to abandon, may not be enough to constitute abandonment." It is almost unnecessary to call attention to this inadvertence, as the meaning of the court was too plain to be mistaken, and the general tenor of the opinion such that no one could be or has been mislead by this omission. The law is, as the plaintiff contends, that "mere nonuser and lapse of time" is not enough to constitute abandonment. But abandonment may be inferred from circumstances, or may be presumed from long continued neglect. *Derby* v. *Alling*, 40 Conn. 410, 436; *Hartford Bridge Co.* v. *East Hartford*, 16 Conn. 149, 173; *New York, N. H. & H. R. Co.* v. *Cella*, 86 Conn. 275, 279, 85 Atl. 521. Lapse of time and nonuser are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances. *Derby* v. *Alling*, 40 Conn. 410, 436.

The plaintiff contended, however, that there was no evidence to warrant a finding of such abandonment. The most important facts relating to this question were as follows: In 1833, when the land was condemned, and for a great many years thereafter, the railroad company had no use for it as a right of way. A wing-wall was so constructed as to clearly exclude this strip of land from the land of the plaintiff. In 1906 a letter was addressed to the plaintiff company which contained the following: "Stonington, February 20th, 1906. To the Land Agent, New York, New Haven and Hartford Railroad Company, New Haven, Conn. Dear Sir:—As a representative of William H. Talmadge, who is the owner of the property adjoining the railroad in Pawcatuck, I take the liberty to write you relative thereto. Mr. Talmadge has decided to sell the same and asked me to dispose of it for him for $1,500, with no intention to deviate from that price. The place is rented to Arthur R. Riley a plumber and he in turn sublets part of it to a shoemaker and the place brings in a rental of $12.50 per month. I spoke to a real estate agent in Pawcatuck to put a sign on it offering the place for sale and after I did so, it occurred to me that if the railroad company four-tracked its system it would be another piece of property that it should own and perhaps it would be just as well for me to write and see what you think of it. After this town voted for license last fall I was offered a rental of $70.00 per month for it, but Mr. Talmadge would not have a saloon there under any consideration. I have no doubt if other parties buy the place the company would want it in order to widen their road and for that reason I believe it would be policy to acquaint the company's representative before going further into the sale of it. In the meantime if I have an opportunity to dispose of it and in justice to the owner I shall do so. Very respectfully, John H. Ryan."

This letter was answered the following day requesting a sketch of the property. This was furnished. Later in 1906 another letter was written to the railroad company relating to the same subject-matter, and the company replied that it was not interested in any land upon that side of the railroad.

In 1907 the defendant, before making a purchase of the property, ascertained that the land records of the town of Stonington showed a perfect title in his prospective grantor. He had no notice of an existing easement, but was informed at this time that the plaintiff made no claim to any land upon that side of the railroad.

In a letter to the defendant, Cella, in 1909, the plaintiff, through its attorneys, stated to the defendant: "We are informed that you are making some improvements and expending money on the building owned by you, located on New York, New Haven and Hartford railroad property, at the corner of Mechanic Street and West Broad Street, in the village of Pawcatuck. The railroad company have use for this property now, and you will be obliged to remove your building. While the railroad company did not have actual use for the property they seem to have no objection to your building remaining on the ground, but now they will be obliged to use the ground, and they will have to ask you to remove your building. We are writing to you to save you any useless expense in repairing this building. Very respectfully, Hull, McGuire & Hull."

For over seventy-five years the claim now made had been discarded, and it is quite clear that it would never have been revived except for the possibility of increasing the track facilities of the plaintiff's road. During that time the defendant and others, through whom he claims, obtained title to this property without any notice what-

ever of an existing right to use this land for railroad purposes.

Such long continued neglect, with the other evidence presented by the defendant in support of his contention as to adverse user, was sufficient to justify the conclusion of the trial court as to abandonment. In Washburn on Easements (3d Ed.) p. 661, the author says: "The owner of an easement may destroy his right to the same by actually abandoning the right as well as the enjoyment, especially if a third party become interested in the servient estate after such act of abandonment; and it would operate unjustly upon him if the exercise of the easement were resumed in favor of the dominant estate." See also *Westcott* v. *New York & N. E. R. Co.*, 152 Mass. 465–468, 25 N. E. 840; *Bicknell* v. *New York & N. E. R. Co.*, 161 Mass. 428–430, 37 N. E. 378; *Snell* v. *Levitt*, 110 N. Y. 595, 603, 18 N. E. 370.

An examination of the record fails to disclose that any material fact has been found without evidence; the finding therefore must stand.

Some of the errors assigned relate to certain evidential facts which the court incorporated in the finding and which the plaintiff now claims are legally inconsistent with the ultimate conclusions of the court as to adverse possession and abandonment. It appears from the finding that there was always room on the *locus* for the railroad company to do all it had occasion to do in constructing and repairing its wing-walls and abutments, without interfering with the blacksmith shop or old building. The trial court has also found that the present building is constructed against the wing-wall and shuts off all access to it. The changes in the location of the abutments at different times, the location of the blacksmith shop and of the Cella building, in connection with other facts of which there was evidence, show that

the finding is not materially inconsistent with the conclusions of the court upon the controlling questions in issue. A construction most favorable to the plaintiff upon this point would not be sufficient to substantiate its claim that it was entitled to claim possession of the entire lot in question. The evidence and claims of the plaintiff in this connection simply refer to a small strip of land back of the conceded location of the old blacksmith shop, which land it is said the railroad company could have used if it desired for the purpose of repairing or reconstructing its abutments and wing-walls. Neither the width nor length of this narrow piece of land is ascertainable from the pleadings, evidence, or finding, by means of which this small portion of the Cella lot might be identified or described if the plaintiff should now be allowed to recover possession of it.

The receipt of the letter of February 20th, 1906, from Ryan to the land agent of the defendant company, was acknowledged by a communication which reads as follows: "February 21, 1906. Dictated by A. C. Mr. John H. Ryan, Stonington, Conn. Dear Sir:—Yours of the 20th inst., offering for sale property owned by William H. Talmage, at Pawcatuck, has been received and if you will send me a sketch showing the property with relation to the railroad, we will look into the matter. Yours truly, ——————————— Commissioner."

There was no error in admitting Ryan's letter in connection with the plaintiff's reply thereto. *Beach v. Travelers Ins. Co.*, 73 Conn. 118, 120, 46 Atl. 867; *Hoggson & Pettis Mfg. Co. v. Sears*, 77 Conn. 587, 594, 60 Atl. 133. The trial court properly overruled the plaintiff's claim that "it does not appear that it was addressed to anybody authorized in any way to waive or give away the rights of the plaintiff." This letter was addressed to the land agent of the New York, New

Haven and Hartford Railroad Company, and answered the day following by one assuming to act for the company. It should be presumed that this answer was made by one whose duty it was to act in this matter, until the contrary appears. *State* v. *Main,* 69 Conn. 123, 140, 37 Atl. 80; 16 Cyc. pp. 1076, 1078. This letter tended to show that notice had been given to the railroad company that a third party was claiming the property at that time. For this purpose only it was properly received in evidence.

In its brief the plaintiff contends that the court erred in admitting evidence as to the contents of a letter said to have been lost, upon the ground that the loss of the letter had not been sufficiently proved. The finding does not disclose that this claim was made before the trial court. Had this claim been made at that time, undoubtedly further evidence would have been required upon that subject.

The defendant, against the objection of the plaintiff, was allowed to testify as to the length of time that he was engaged in the construction of the building upon this property, also that he had expended about $5,000 in the erection of the same. This evidence was plainly admissible under the issue raised upon the defendant's claim for improvements made upon the property before the commencement of this action.

There is no error.

In this opinion the other judges concurred