## Albert V. Mentz vs. Town of Greenwich.

Maltbie, C. J., Haines, Banks, Avery and Simpson, Js.

Argued December 8th, 1933—decided February 6th, 1934.

*Wilbur S. Wright,* for the appellant (defendant).

*Raymond E. Hackett,* for the appellee (plaintiff).

BANKS, J.  The plaintiff brought this action to quiet and settle the title to two adjoining tracts of land in Greenwich which are described in the complaint, the first tract being upland and the second tract a small triangular piece of lowland or beach lying between the first tract and tidal water.  The defendant in its answer disclaimed any interest or estate in the first tract and in a small portion of the second tract, but denied that the plaintiff was the owner in fee simple of the remainder of the second tract, claimed that this was a portion of a public dock and landing place by immemorial usage and dedication, and that the defendant had acquired title to it by adverse possession, and, further, that the deed of the same to the plaintiff was made when his grantor was ousted of possession by the defendant, and was therefore void.  The trial court found that the plaintiff was the owner in fee simple of the tract in dispute and that the defendant had no right, title or interest therein.

The defendant seeks numerous corrections in the finding.  Those to which it is entitled, and which are material to the questions discussed, are incorporated in the statements of fact appearing herein.

The first tract of land described in the complaint, title to which is conceded to be in the plaintiff, is bounded on the west by Greenwich Point Road and on the south by Tomac Lane which runs from Green-

wich Point Road to Tomac Harbor, an inlet of Long Island Sound. The southeasterly boundary of this tract is a line running from a point in the northerly line of Tomac Lane, two hundred and fifty-one feet east of Greenwich Point Road, in a northeasterly direction to a brook which empties into Tomac Harbor. Except for a few feet at the westerly end, where there is a jog in the wall, this boundary is marked by a stone wall which crosses the brook. This wall is also a retaining wall which protects the upland of the first tract from the flow of the tidal waters. The tract in dispute is the beach between this wall and the waters of Tomac Harbor, with a frontage of about ninety feet on the harbor. It adjoins the public dock at the foot of Tomac Lane and has for the past forty years been used by the general public as a landing place and a place for hauling out boats and laying them up for storage or repairs. The plaintiff contends that this strip of beach was included in the conveyances forming his chain of title to the upland, while the defendant denies this, and also claims that from time immemorial it has been a public landing place at the foot of Tomac Lane, and used as such in connection with the dock which it adjoins.

The plaintiff traces his title to the upland back to 1838 through a chain of deeds which he claims, and which the trial court found, conveyed also the title to the strip of beach in dispute. One of the deeds of 1838, that from Alexander Hendrie to Lockwood, conveyed a one-half interest in a fifty-five acre tract bounded south "by salt water, land of said Charles and a driftway" and lands of others, apparently farther to the west. The other deed of 1838 conveyed a tract of forty-five acres bounding it on the south by land of Charles Hendrie, Tomac Lane and other lands apparently farther to the west; it also conveyed, after

an intervening description of other lands, "all of the beach southeast of said forty-five acre tract which belonged to Alexander Hendrie." The trial court found that this beach was the land in dispute, but there is nothing in the record to support that finding. The land which "belonged to Alexander Hendrie" evidently was not the land now owned by the plaintiff as is clear from a comparison of the descriptions of the two deeds; indeed, the beach referred to is evidently upon the "salt water" mentioned in the first deed and the descriptions of the two taken together indicate pretty clearly that the land of Charles Hendrie referred to in both was the land to the east of the brook and the salt water was still further to the east, while the "driftway" was Tomac Lane. To bring the land in dispute within the reference in the deed of 1838 is substantially to contradict the construction claimed for subsequent deeds of 1871 and 1872, which omit all reference to any beach but are claimed to include the land in dispute. This finding of the trial court cannot stand.

A deed in 1871, conveying one hundred acres, and one in 1872, conveying seventy-five acres, each bounded the land conveyed on the south in part on "Tatomock Harbor and lane leading thereto," but nowhere in the evidence is the harbor referred to in these deeds identified as that portion of the tidal waters abutting the tract in dispute. That it was not this portion of the harbor is fairly apparent from the existence of the ancient stone wall which from time immemorial has been the southern boundary of the plaintiff's property, with its significant continuance to the east beyond the brook, and by the undisputed testimony as to the immemorial common use of the beach by the public without objection on the part of the former owners of the plaintiff's property.

There is in the record no evidence that the tract in dispute was included in the deeds in the plaintiff's chain of title prior to 1897, and nothing in their terms or the circumstances surrounding them which affords ground for a reasonable inference to that effect. The finding of the trial court that the land in dispute was included in those conveyances lacks essential support.

The first deed in the plaintiff's chain of title, in which the upland now owned by him was conveyed as a separate and distinct parcel, was a deed executed by Joshua B. Hendrie March 9th, 1897. In this deed, out of the seventy-five acre tract deeded to him in 1872, he conveyed by way of gift to his daughter, Lucy H. H. Jennings, land described as follows: "All that certain lot of land situated in said Greenwich and bounded northerly by my own land, easterly about one hundred and forty (140) feet by a brook running into Tomac Harbor, southerly by Tomac Lane, and westerly about one hundred and twenty (120) feet by the highway leading to Stamford." In September, 1900, Hendrie caused a survey to be made which the trial court found was a survey of the land conveyed to his daughter in 1897, and this was received in evidence as plaintiff's Exhibit 1. The survey includes both the upland and the triangular piece of beach which is in dispute. Upon the trial the surveyor was permitted to testify, over the defendant's objection, that Hendrie, who was then dead, had given him instructions in the preparation of his survey by pointing out to him the boundaries of the land conveyed by him to his daughter in the deed of March 9th, 1897. The court found that the boundaries thus pointed out and appearing upon the survey, Exhibit 1, accurately defined and designated the property conveyed to Mrs. Jennings in that deed. In the deed the property is bounded "easterly about one hundred

and forty (140) feet by a brook running into Tomac Harbor." Upon Exhibit 1 the easterly boundary upon the brook is ninety-two feet. The southerly terminus of this boundary is the point where the stone wall which separates the upland from the beach crosses the brook. The triangular tract in dispute is indicated upon Exhibit 1 by a line drawn from this point to a point in the northerly line of Tomac Lane, two hundred and fifty-one feet from Greenwich Point Road following the stone wall separating the upland from the beach, except for the jog in the wall at the westerly end, thence S. 57° 04′ E. 99 feet, thence N. 21° 17′ W. 90.7 feet to the point of beginning. This last boundary, the compass direction of which apparently should be N. 21° 17′ E., does not, upon the survey, coincide with the shore of Tomac Harbor. Treating this, as the trial court apparently did, as a part of the easterly boundary of the land conveyed, that boundary becomes 182.7 feet long (92 feet on the brook, and 90.7 feet by the line given as the southeasterly side of the triangle) instead of one hundred and forty feet upon the brook as called for in the deed.

On September 27th, 1900, Hendrie executed a second deed to his daughter of land described as follows: "North by land of said grantor, east by a brook, the center line thereof, south by land of said grantee, and the north line of said premises runs from east to west to a point one hundred and twenty (120) feet from the northeasterly corner of the highway known as Greenwich Point Road and Tomac Lane, on the easterly side of said Greenwich Point Road." This deed also recites that "for the purpose of making more certain the description of the above premises and premises heretofore conveyed to said grantee" the same taken together shall be of such width that the distance on a line running from a point on Tomac Lane two

hundred and fifty-one feet from the corner of Greenwich Point Road and Tomac Lane, N. 23° 02′ E. to the northerly boundary line shall be 170.2 feet and shall intersect such line at a point 247.1 feet from a point on Greenwich Point Road one hundred and twenty feet from the northeasterly corner of Greenwich Point Road and Tomac Lane. This deed apparently conveyed to Mrs. Jennings a triangular piece of land adjoining on the north that conveyed to her in the 1897 deed, having its apex on Greenwich Point Road and its base, the length of which is not given, upon the brook. The 170.2 foot line, which the 1900 deed gives as the width of the premises conveyed in both deeds "taken together," appears upon the map, Exhibit 1, indicating that the map purports to include the property conveyed in both deeds. It clearly is not, and apparently was not intended to be, a survey of the property conveyed in the deed of 1897, as the court found. It is impossible to reconcile the easterly boundary in the deeds of 1897 and 1900 with the map. It cannot be held to be an accurate portrayal of the land conveyed in deeds when such portrayal contradicts the express descriptions in the deeds, and the trial court erred in finding that it accurately designated the property conveyed by Hendrie to Mrs. Jennings.

Mrs. Jennings conveyed the upland by warranty deed and the beach by quitclaim deed in 1902, and by mesne conveyances the upland was conveyed to the plaintiff by warranty deed and the beach by quitclaim deed on June 30th, 1925. A mere paper chain of title does not establish ownership in one unless his possession or that of his predecessors in title is shown, though title satisfactorily established may draw with it possession in the absence of any evidence to the contrary. *Foote* v. *Brown,* 81 Conn. 218, 225, 70 Atl.

699. Apart from the flaw in her record title, it was undisputed, and was established by Mrs. Jennings' own testimony, that she never used or occupied the beach. The plaintiff cannot therefore trace his title back to her as an owner in possession. Ancient deeds, more than thirty years old, are admissible to prove ancient possession; they are evidence of acts of ownership and of facts tending to prove ownership, and in many cases involving ancient possession are the only evidence that the nature of the case permits. *Merwin* v. *Morris*, 71 Conn. 555, 573, 42 Atl. 855; *New York, N. H. & H. R. Co.* v. *Cella*, 88 Conn. 515, 520, 91 Atl. 972. The plaintiff's title deeds, subsequent to those from Hendrie to Mrs. Jennings, were not in the category of ancient deeds, being less than thirty years old at the time of the trial, and were not in themselves sufficient to establish ownership in the plaintiff, *Foote* v. *Brown, supra,* and there was no other evidence in the case of acts of ownership or possession of the beach on the part of any of his predecessors in title to establish his ownership.

It is apparent that the declarations of Hendrie as to the boundaries of the property conveyed by him in the deed of March 9th, 1897, made while directing a survey of the property for the purpose of making the map, Exhibit 1, which the court has found correctly portrays the property conveyed, and includes the strip of beach in dispute, were largely relied on by the court in determining the question of the plaintiff's title to the beach. Declarations as to the location of ancient boundaries are hearsay, and are not admissible in evidence unless it appears (1) that the declarant is dead, (2) that he would be qualified as a witness to testify if present, and especially that he had peculiar means of knowing the boundary, (3) that the statement was

made before the controversy in suit arose, and (4) that he had no interest to misrepresent the truth in making the declaration. *Turgeon* v. *Woodward,* 83 Conn. 537, 541, 542, 78 Atl. 577; *Borden* v. *Westport,* 105 Conn. 139, 149, 134 Atl. 802. Hendrie was dead, he had peculiar means of knowing the boundaries of the property he had conveyed and his declaration was made before this controversy arose. It cannot be said, however, that he had no interest to misrepresent the truth. "By 'no interest to misrepresent,' is meant freedom from . . . self-interest, or personal advantage; disinterested not merely in . . . having no pecuniary interest, but in the broader sense of being absolutely impartial and indifferent to the controversy on trial." *Turgeon* v. *Woodward, supra,* p. 542.

Hendrie had given a warranty deed in which the property conveyed was described as bounded northerly on his own land and as having an easterly boundary of one hundred and forty feet on the brook. The survey and the declarations accompanying it were made prior to the second deed to Mrs. Jennings which conveyed an additional frontage on the brook, and it purported to give the boundaries of the two parcels taken together. The survey fixed the boundary of the two parcels upon the brook at ninety-two feet with an additional boundary on the east, not marked by the brook, of 90.7 feet. As already noted, it is impossible to reconcile the survey with the descriptions in the two deeds, and it cannot be determined to what extent, if any, Hendrie would have benefited by the adoption of the boundaries which he pointed out to the surveyor. It is apparent, however, that he had a direct interest in the location of the boundary line between the land conveyed to his daughter and that retained by him, which he manifested in directing the survey, the purpose of which, in part at least, was to fix the

width of the land conveyed and thus determine the location of its northerly boundary upon Hendrie's land. The law presumes that "by reason of a desire to extend his own bounds, or to avoid liability on his covenant of warranty, [he] might misrepresent the bounds he still owned, or those of the adjoining land which he had owned, and hence his statements made under such circumstances did not afford that assurance of sincerity and impartiality which is a necessary legal condition precedent to the admission of this kind of hearsay evidence." *Turgeon* v. *Woodward, supra,* p. 545. Hendrie's declarations were not admissible for the purpose of establishing the correct boundaries of the land he conveyed to his daughter. *Borden* v. *Westport,* 112 Conn. 152, 163, 151 Atl. 512.

The defendant produced a witness who was asked if he used the disputed triangle under a claim of right and the court excluded the evidence. An essential element of the defendant's claim of title by adverse possession was that the use or occupation of the property be under a claim of right, and the intention of the person or persons using the property was material upon the issue as to the character of such use. When the intention of a witness is a fact relevant to the issue he may testify directly as to his intent. *Lentine* v. *McAvoy,* 105 Conn. 528, 532, 136 Atl. 76. This evidence should have been admitted.

The admission of declarations of Dean, plaintiff's predecessor in title, offered to prove that he was in possession of the tract in dispute, could not have harmed the defendant. The declarations contained no statement that he was in possession or of conduct indicating possession.

There is error and a new trial is ordered.

In this opinion the other judges concurred.