## JULIA BRIERLEY
*vs.*
## MARIE REHM JOHNSON

Court of Common Pleas    New London County    File No. 9358

MEMORANDUM FILED AUGUST 2, 1943.

*John T. Barry,* of Norwich, for the Plaintiff.

*Arthur F. Libby,* of Norwich, for the Defendant.

CULLINAN, J.   In this action, seeking a foreclosure of a

mortgage and possession of mortgaged premises, the plaintiff alleges that on March 24, 1934, John F. Way, now deceased, executed his note in the sum of $500, payable to the plaintiff or order, in monthly installments of $15 each, commencing May 1, 1934, together with interest on the unpaid principal at the rate of seven per centum per annum payable monthly in advance from May 1, 1934; that to secure said note, the decedent executed to the plaintiff a third mortgage on his homestead in the Town of Norwich; that in May and June, 1934, two payments of $17 each, on account of the mortgage principal and interest, were made to the plaintiff by John F. Way; that thereafter no further payments were made; that John F. Way died intestate at Norwich on October 10, 1936; that his homestead, on April 22, 1937, was sold to the defendant and her husband by the administrator of the John Way estate; that title to the property now vests in the defendant alone by reason of her husband's subsequent death and by virtue of the terms of a certificate of devise issued to her; that the defendant is in possession of the premises; that no payments of either mortgage principal or interest have been made to the plaintiff; that the mortgage continues to be the property of the plaintiff; and that there is due on said note the entire principal and interest, less, of course, the aforesaid admitted payments of $34.

These allegations, in the main, are conceded by the defendant. However, by cross complaint, the defendant claims that following the death of John Way, the plaintiff presented to the administrator of his estate a written claim for personal services rendered the decedent during his lifetime; that this claim was ultimately compromised by the administrator of the John Way estate; that the plaintiff, upon receipt of the money in compromise of her claim, executed a release discharging the John Way estate from all claims and demands; that as a result of the execution and delivery of this release the plaintiff discharged not only her claim for personal services allegedly rendered the decedent, but also extinguished the debt created by John Way's execution of the mortgage note in controversy; that through inadvertence or oversight, the mortgage securing such debt was not released by the plaintiff when the money, in compromise of her claim, was paid to her by the administrator of the John Way estate; that the plaintiff refuses to release this mortgage and surrender the mortgage note; and, by way of equitable relief, the defendant seeks an order or decree, requiring the plaintiff to release the mortgage, joined with a

request for a restraining order forbidding foreclosure of the plaintiff's mortgage and collection or assignment of the mortgage note.

A brief outline of the relationship between the plaintiff and the late John Way seems desirable. It is undisputed that in 1924 the plaintiff became an employee of Mr. Way and served him in the capacity of housekeeper, cook, and personal attendant. For a considerable period thereafter, the plaintiff appears to have received her regular and stipulated weekly wage from her employer. However, the difficult and uncertain depression period created a strained financial condition for Mr. Way, resulting in nonpayment of wages to the plaintiff and resulting further in claimed advances of cash by her to meet Mr. Way's fixed realty charges of taxes, insurance premiums, and water rates.

Throughout this period, title to Mr. Way's homestead seems to have fluctuated between its owner and the plaintiff. At one point, title vested completely in Mr. Way; subsequently it vested wholly in the plaintiff; thereafter, an undivided one-half interest was held by each; and ultimately complete ownership was restored to Mr. Way.

This financial detail becomes relatively unimportant, save as background, since on March 24, 1934, Mrs. Brierley and Mr. Way entered into an agreement (plaintiff's Exhibit C) wherein the plaintiff agreed to convey the one-half interest in the homestead, then vested in her, to Mr. Way; wherein he agreed to pay Mrs. Brierley $100 cash; wherein he agreed to deliver to her the note in controversy, secured as it is by a mortgage on his former homestead; wherein the parties agreed that "an account had been struck" between them; and wherein it is provided that should the mortgage note not be paid according to its terms, then the written agreement was to be regarded as null and void. Thus, on March 24, 1934, the plaintiff and Mr. Way would seem to have effected a complete adjustment of their accounts.

It is undisputed that in May and June, 1934, Mr. Way made payments of mortgage principal and interest, each in the sum of $17. Thereafter he was delinquent, continuing in this fashion until his death.

Following Mr. Way's death, intestate Charles A. Gager was appointed and qualified as administrator of his estate. On

December 1, 1936, the plaintiff forwarded to Mr. Gager, defendant's Exhibit 1, couched in the following terms:

"No. 94 Rodney St.,
New Bedford, Mass.,
Dec. 1st, 1936

Charles A. Gager, Admr.
Estate of John F. Way, decd,
           to             Julia Brierley, Dr.

| | |
|---|---:|
| To personal services as general housekeeper for decedent for 76 weeks prior to March 24th, 1934, to wit, from Oct. 10th, 1932 to Mar. 24th, 1936, 75 weeks at $7.00 per week, as agreed, | $525.00 |
| To personal services as housekeeper, cleaning house, cooking, etc., on alternate week-end of 2½ days, @ $5. per time, from June 1934 to Oct. 1936, 56 periods of service, | 280.00 |
| To personal service and care during illness of deceased, 2 weeks @ $28.00 | 56.00 |
| | $861.00 |

Received payment."

This claim was disallowed, application was made for the appointment of commissioners to pass on its merits, commissioners were selected, and at the date of hearing the plaintiff, acting with her attorney, and the administrator, effected a compromise whereby the administrator, on behalf of the estate, agreed to pay the plaintiff $100. At this point, the plaintiff's counsel prepared, and the plaintiff signed defendant's Exhibit 2.

"January 14, 1938

Received of Charles A. Gager, Admr. One Hundred Dollars in full settlement of all claims and demands to date and especially in full for claim filed by me against the estate of John F. Way.

Julia Brierley."

The plaintiff now contends that this release, although concededly prepared by her attorney and read by her prior to its execution, was given for the sole purpose of discharging her claims for services rendered John F. Way; that she never intended, in executing the document, to discharge the debt created by the mortgage note of March 24, 1934; that it has

been her continuing intention to press for payment of the mortgage note according to its terms; and that she has never abandoned her right of security under the mortgage.

On the contrary, the defendant claims that the release executed by the plaintiff was intended to and did, in fact, release not only her claim for personal services, but also the liability created by the mortgage note; that the plaintiff's conduct, after having received the mortgage note in 1934, offers convincing evidence of her intention to abandon the security of her mortgage; and that the plaintiff is now attempting to profit through an inadvertance in the administrator's failure to secure a release of mortgage at the time when he accepted defendant's Exhibit 2, and paid the plaintiff $100.

An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties. *Beach vs. Isacs,* 105 Conn. 169, 176. Thus, I pass to an immediate consideration of the defendant's claim that the plaintiff, through her conduct after March 24, 1934, the date on which she received the mortgage note in dispute, evidenced an intention to abandon the security of her mortgage.

Abandonment is a question of fact. To constitute an abandonment there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such intention is manifested. *Stevens vs. Town of Norfolk,* 42 Conn. 377, 384; *Collins vs. Lewis,* 111 id. 299, 303. "A debt may certainly be abandoned and we see no valid reason why a mortgagee may not also abandon his right of security under the mortgage." *Glotzer vs. Keyes,* 125 Conn. 277, 233.

Facts indicative of the plaintiff's intention to abandon the security of her mortgage may be summarized in the following fashion:

1. Save for the acceptance of mortgage principal and interest in May and June, 1934, the plaintiff remained passive and inactive until 1942.

2. Although the obligation was in complete default during the lifetime of Mr. Way, no resort was had to legal process to enforce its collection.

3. Similarly, after the death of Mr. Way the plaintiff

made no effort to enforce collection of her note by demand upon or legal process against the administrator of the John Way estate.

4. At no time, during the period of administration of the John Way estate, did the plaintiff request liquidation of her note, nor did she inquire concerning the likelihood of its liquidation. Throughout this period she was represented by competent counsel and was in personal communication and contact with the administrator of the Way estate.

5. The plaintiff advanced no evidence of a concern with such tax obligations as accrued òn the homestead of John Way subsequent to her acceptance of the mortgage note.

6. The plaintiff advanced no evidence of a concern with obligations for mortgage principal and interest on the two mortgages which concededly preceded the third mortgage executed in her favor.

7. The Way estate was sold by the administrator of ·the John Way estate in 1937 to the defendant and her husband. From the date of sale to said 1942 no demand was made by the plaintiff upon the purchasers for payment of principal or interest.

8. Through the years of 1934 to 1942 the plaintiff was not affluent. Had she owned a note which she regarded as pos' sessing validity, she would normally be expected to have pur' sued its collection.

The inference from acquiescence for so long a time is "practically irresistible." *Hurd vs. Hotchkiss,* 72 Conn. 472, 481.

While mere nonuse and lapse of time alone are not enough to constitute abandonment, they are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances, and aban' donment may be inferred from circumstances, such as failure by acts or otherwise to assert any claim to the right alleged to have been abandoned, or may be presumed from long con' tinued neglect. *New York, New Haven & Hartford Railroad Co. vs. Cella,* 88 Conn. 515; *Town of Derby vs. Alling,* 40 id. 410, 436.

Succinctly stated, the plaintiff from June, 1934 to 1942 stood by, giving no indication of any interest in the premises.

This span covered the lifetime of the owner, the period of administration of his estate, and a change in ownership whereby the defendant and her husband acquired title. It was not until after eight years of inaction that the plaintiff moved forward to assert a right, which, I am confident, she had long since regarded as having been abandoned. Under such circumstances, the institution of the plaintiff's foreclosure action is not to be regarded in equity "with much complacency." *Banks vs. Judah,* 8 Conn. 145, 161.

An unusual act of the plaintiff, occurring after Mr. Way's death, creates a striking inference of her intention to abandon the mortgage note and its supporting security. It will be recalled that on March 24, 1934, when the plaintiff and Mr. Way executed their written agreement they purported "to strike an account." In this fashion, the plaintiff's claim for unpaid wages for personal services rendered Mr. Way was, theoretically at least, liquidated in its entirety. Despite this agreement the plaintiff, in preparing her claim against the Way estate, included charges for the period from October 10, 1932 to March 24, 1934. Unless base and improper motives be attributed to the plaintiff, it is difficult to justify this claim against Mr. Way's estate. For the written undertaking of the parties execued March 24, 1934, comprehended satisfaction of all personal service from the date of the plaintiff's original employment to the date of the agreement. Surely, it was the intention of the parties to discharge the period from October 10, 1932 to March 24, 1934. Thus, the plaintiff, in presenting her written claim to the administrator, is found in the unhappy position of a dual claimant.

I am unwilling to ascribe deceit or duplicity to the plaintiff in presenting her claim to Mr. Way's administrator. Rather, I prefer to believe that she had elected to treat the written agreement as a complete nullity; that she had abandoned her rights under the note because of Mr. Way's failure to meet its terms; that she had abandoned the hazardous security of a third mortgage; and that she regarded herself in the role of a claimant, presenting a valid unliquidated claim against the estate of a deceased employer.

I am so completely convinced of the plaintiff's intention to abandon her mortgage security as indicated by her conduct, her appearance and her demeanor in court, that I am content to rest this decision on that conviction. Thus it becomes un-

necessary to pass on her intent in executing and delivering the formal written release (defendant's Exhibit 2) to the administrator of the John Way estate.

Judgment may enter for the defendant on the complaint, and a decree may enter on the cross complaint, that the mortgage from John F. Way to Julia Brierley, dated March 24, 1934, and recorded in the Norwich Land Records at volume 201, page 414, be declared null and void and of no effect, without validity as a lien on the premises described in paragraph 2 of the complaint, being the same premises described in paragraph 1 of the cross complaint. Further judgment may enter for the defendant to recover of the plaintiff nominal damages assessed at $25 together with taxable costs.